# NEWPORT COUNTY.

15 321
19 655

15 321
20 431

15 321
21 298

FRANCIS B. PECKHAM *et al. vs.* MARY H. NEWTON *et als.*

In this State neither statute nor rule of court fixes any special class of securities for investment by trustees. Hence trustees are only required to be prudent in investment, having regard to the permanent disposition, the income, and the safety of the trust fund.

A legacy refused by the legatee falls into the residue of the testator's estate.

Bequest to the "Home for the Aged, a benevolent association in said Newport." There was no such association.

*Held,* that the bequest should be paid to the "Townsend Aid for the Aged," in Newport, as most closely corresponding to the designation in the will.

Bequest of $5,000 each to certain persons, followed by a residuary bequest in trust to pay the income of the residue to these persons, with power to the trustees to use the principal if needed for their comfortable support.

*Held,* that the trustees should not use the principal so long as the life legatees had other property which could be used for their comfortable support.

BILL IN EQUITY for instructions.

*Newport,* May 14, 1886. DURFEE, C. J. This bill is brought by the complainants as executors and trustees under the will of John B. Newton, late of Newport, for instructions. The will makes certain specific bequests, after the payment of debts and legacies, and then disposes of the residue as follows, to wit: —

"All the residue of my estate, real and personal, to Francis B. Peckham and Henry C. Stevens, in trust, for the following purposes, viz.: To collect and pay the income thereof quarterly or semi-annually as follows: two thirds of said income to my sisters Caroline and Mary H. jointly so long as they both shall live, and to the survivor of them during her life, and one third of said income to the said Anna Maria Lane during her life. If it shall ever appear to the said trustees that either of my said sisters or the said Anna Maria Lane needs more for her comfortable support than is afforded by the above provision, then and in that case the said trustees, in order to provide such comfortable support, are directed to resort to and make use of the principal sum, that is to say, the property constituting said residue, in such case the residue to be separated into two parts or shares, one part consisting of two thirds thereof, and the other part consisting of one

third thereof, the two thirds for the benefit of my sisters as aforesaid, the one third for the benefit of Anna Maria Lane as aforesaid. It is my desire that my said sisters and sister-in-law shall have, so far as possible, every comfort to which they have been accustomed during my lifetime."

The will empowers the trustees in their discretion to sell the real estate and reinvest the proceeds. It also directs them to transfer and pay over the remainder after the expiration of the life interests to " The Home for the Aged, a benevolent association in said Newport."

The bill sets forth that the estate which came to the trustees under the will consists in part of bank stocks and bonds purchased and held by the testator in his lifetime, and states that the trustees propose, contrary to the wishes and opinions of the legatees or some of them, to sell the stocks and bonds and reinvest the proceeds in such other securities or manner as our laws would clearly approve, with the object of making the capital more safe, or of putting it in a form more proper for trust funds, despite the loss of income which is likely to ensue. There are three bonds, one for $5,000 of the Boston and Albany Railroad Company, and two for $5,000 each of the Boston Water Loan. The stocks are national bank stocks, and it does not appear but that the banks are of good standing. The bill assumes that an investment in such bonds and stocks, whatever their character, is an improper investment for trust funds. We think this is a stricter rule than has ever been applied in this State to investments already existing. We have no statute law or rule of court which points out any particular classes of securities for trust investment. It is true that the court regards safety as paramount to profit, but nevertheless, if safety and profit can be combined, neither should be unnecessarily sacrificed. Trustees must be prudent and vigilant and exercise a sound judgment. They are "to observe how men of prudence, discretion, and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income as well as the. probable safety of the capital to be invested." *Harvard College* v. *Amory*, 9 Pick. 446, 461. The fact that the bonds and stocks were bought and held by the testator, commends them for retention, so long as there

is no doubt of their safety. 1 Perry on Trusts, § 465. Of course any of them which are unsafe, if any such there are, ought to be sold; but in our opinion such as are safe, as prudent men well informed and skilful in the matter of investment understand safety, should be retained for the benefit of the legatees. The court cannot instruct the trustees more definitely without fuller information, and if the trustees are still in doubt as to their duty, after what we have said, we must refer the matter to a master for investigation.

The bill sets forth that it is probable that the income of the residue will not be sufficient for the comfortable support of the life legatees, if any part of it be lost or if the income be diminished. In view of this, the trustees desire to know whether they shall break into the capital, so long as the life legatees respectively have other property available for their comfortable support. The intent of the testator in this particular is not so clearly expressed in the will as to be free from doubt; but it seems to us that the more reasonable conclusion is that the testator intended to have the capital kept intact so long as the income, together with the available resources of the life legatees, should suffice for their comfortable support, and did not intend to have it resorted to, to the detriment of the legatee in remainder, unless there should be some actual need. The will gives the life legatees five thousand dollars each by specific bequest. We do not think it is reasonable to suppose that the testator did not mean to have the income of these bequests go for the comfortable support of the life legatees, if the income of the residue should fall short; but if he meant to have the income of the bequests go for the comfortable support of the life legatees, we see no ground on which we can decide that he did not likewise mean to have the bequests themselves, or any other property belonging to the life legatees, go to the same purpose, before recourse to the capital of the residue given over in remainder. We instruct the trustees accordingly.

The bill sets forth that there is no association in Newport with the name of " Home for the Aged," but that there is a corporation there formerly called " The Association for the Aid of the Aged," the name of which was changed in 1882 to the " Townsend Aid for the Aged," the object of which is the charitable aid of aged

poor persons in Newport. The bill does not show the existence of any other association which so closely corresponds to the designation in the will. We think the capital of the residue should go to "The Townsend Aid for the Aged." *Pell* v. *Mercer*, 14 R. I. 412, 446.

The bill shows that the will bequeaths, along with other specific bequests, "to Mary Anna Peckham a government bond for five thousand dollars, bearing five and one half per cent. interest, or an equivalent of said bond in money, and that said bequest has been declined and formally renounced by her. The complainants ask whether the bond or money so bequeathed has fallen into the residue, or goes as intestate to the next of kin. We presume that legacies are rarely renounced, for we do not find any case which is precisely in point. It is, however, well settled that lapsed and void specific or pecuniary legacies fall into the residue, in the absence of any indication to the contrary, and the law is broadly stated by Jarman as follows, to wit : " A residuary gift of personal estate carries not only everything not in terms disposed of, but everything that in the event turns out to be not well disposed of. A presumption arises for the residuary legatee against every one except the particular legatee, for a testator is supposed to give his personalty away from the former only for the sake of the latter." 2 Jarman on Wills, 5th Am. ed. by Randolph & Talcott, 365. See, also, 1 Ibid. 635, note 8 ; *Cambridge* v. *Rous*, 8 Ves. Jun. 23, 25 ; *Leake* v. *Robinson*, 2 Merivale, 360, 393 ; *Reynolds* v. *Kortright*, 18 Beav. 417, 427.                    *Decree accordingly.*

*Francis B. Peckham*, for complainants.

*Samuel W. Peckham*, for the respondent Newton.

*William P. Sheffield & William P. Sheffield, Jun.*, for the Townsend Aid for the Aged.