HOWARD L. CARPENTER *et al., Trs. vs.* LELAND B. SMITH *et al.*

AUGUST 2, 1950.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

BAKER, J. This is a bill in equity for the construction of the will of Albert Walker, late of Providence, deceased, and for instructions to trustees thereunder. When the cause was ready for hearing for final decree in the superior court it was certified to this court for our determination in accordance with general laws 1938, chapter 545, §7.

The complainants are the surviving trustees named in and acting under certain provisions of the will. They and the respondents are alleged to be all the parties in interest. All respondents have entered their appearances, filed answers and joined in the prayer for construction. No minors, no person under any legal disability, no one in the military service and no unascertained or contingent interests are involved herein. Before certification certain testimony was taken by deposition.

It appears that the testator Albert Walker, a widower, died on September 21, 1904 at the age of seventy years, leaving a will dated September 14, 1903 which was duly admitted to probate by the probate court of the city of Providence. His wife had died in 1899 and he was survived only by a daughter Mabel Walker, who was thirty years of age when the will was executed and was unmarried and in poor health at the time of his death. His closest relatives, other than his daughter, were three nieces and a nephew, all children of deceased sisters. By his will, after providing in the usual manner for the payment of debts and expenses and after giving small legacies to his nieces, nephew and a few friends, he left the residue of his estate, which was substantial, to three trustees in trust for the benefit of his daughter Mabel. One of these trustees Franklin A. Balcom, of Mansfield, in the commonwealth of Massachusetts, described in the will as Frank A. Balcom, died January 1, 1914 and the vacancy thus created never having been filled the two remaining trustees thereafter acted.

Following the testator's death his daughter continued to occupy the family home on Medway street in Providence

where they had both resided and which was the only real estate owned by the testator at the time of his death. In accordance with the provisions of his will Hattie Maria Drown and Ida Frances Drown, sisters, who were friends of the family, moved into the home, looked out for the property and took care of Mabel Walker. The first-named sister died December 19, 1931 but Ida Frances Drown, who is now of an advanced age and in poor health, is still living there under the terms of the testator's will. Mabel Walker, who resided continuously in the home practically all her life, died March 24, 1948 at the age of seventy-five years unmarried and without issue, leaving as her heirs at law and next of kin four cousins of different degrees of consanguinity, one on the paternal side and three on the maternal side. Her death terminated the greater part of the trust and raised the questions propounded herein.

The material portion of the testator's will, namely, the residuary clause, omitting therefrom certain fractional distributions not in question, reads in part as follows:

"Tenth, All the rest and residue of my estate both real and personal and wheresoever the same may be situated of which I shall die seized and possessed, I give, devise and bequeath to Frank A. Balcom, of Mansfield, Massachusetts, Howard L. Carpenter, of Providence, Rhode Island and Ida Frances Drown, of Providence, Rhode Island, with power to sell, invest and reinvest but without liability for loss on such investments, to them and their heirs, but in strict trust nevertheless for the benefit of my daughter, Mabel Walker, upon the following terms and conditions:

That my said trustees shall use the income from said trust estate and so much of the principal of the same as they may deem necessary for the comfortable support of my said daughter during her life. They shall provide my said daughter with a good home and maintainance including a competent housekeeper in the house I have built and provided for her use at No. 167 Medway Street, Providence, Rhode Island. In addition there to my said trustees shall offer to Hattie Maria

Drown of Providence, Rhode Island, and Ida Frances Drown, of Providence, Rhode Island, a home and board with my said daughter, Mabel Walker, in my house aforesaid at No. 167 Medway Street, on condition that said Hattie Maria Drown and Ida Frances Drown render my said daughter such care and companionship as they may be able to do and should said Hattie Maria Drown and Ida Frances Drown, or either of them, survive my said daughter, this offer having been accepted and the conditions fulfilled by them, I direct my said trustees to allow them the free use of my said house and furniture at said No. 167 Medway Street as long as either of them may live without expense to them in the care and preservation of said house. In the event of the above arrangement, to wit, for the companionship and association between my said daughter, Mabel Walker, and said Hattie Maria Drown and Ida Frances Drown becoming unsatisfactory to my said daughter, the portion of this will relating to the continued support and maintainance of said Hattie Maria Drown and Ida Frances Drown shall cease and be of no effect.

Upon the death of my said daughter, Mabel Walker, if she shall leave any issue, I give, devise and bequeath to her issue including the children of any deceased child per stirpes absolutely in fee simple, seven eighths ($\frac{7}{8}$) of my said trust estate which shall remain after the death of my said daughter, but if my said daughter shall die leaving no issue and shall also be at the time of her death single and sole, I direct that said seven eighths of said trust estate shall be disposed of as follows:

One fourth ($\frac{1}{4}$) part thereof to my niece, Frances Baker, and her heirs, widow of John Baker, of Attleboro, Massachusetts, or in the event of her prior decease to any children that she may leave surviving her, and their heirs. * * *

One sixteenth ($\frac{1}{16}$) part to Frank A. Balcom and his heirs, of Mansfield, Massachusetts, or in the event of his prior decease to any children that he may leave surviving him.

And I direct my said trustees to hold the remaining one eighth (⅛) part and to use so much thereof either of the principal or interest as they may deem necessary for the maintainance of my said house at No. 167 Medway Street, Providence, Rhode Island, during the lives of Hattie Maria Drown and Ida Frances Drown or the longest liver of them, for the payment of taxes, repairs, insurance, water rates and other necessary expenses, and upon the death of the survivor of said Hattie Maria Drown and Ida Frances Drown, my said trustees shall divide among those who were my legal representatives at the time of my decease and their heirs, per stirpes, share and share alike, said remaining one eighth (⅛) part of said trust estate and its accumulations, if any."

The following questions are propounded to the court. "(a) Are the specified fractional shares of the portion of said trust estate which is distributable upon the death of said Mabel Walker without issue under the terms of the Tenth clause of said will of Albert Walker to be determined by taking the specified fractions (which fractions taken together amount to a total fraction of seven-eighths) of the whole of said trust estate or by taking such fractions of only seven-eighths of said trust estate? (b) Is the value of the house and land comprising the testator's said home at 167 Medway Street, Providence, Rhode Island and the furniture and furnishings therein to be included or excluded in determining the one-eighth share of said trust estate to be retained in trust until the death of said Ida Frances Drown under the terms of the Tenth clause of said will of Albert Waker? (c) Who is entitled to receive distribution upon the death of said Ida Frances Drown of the one-eighth share of said trust estate distributable upon her death under the terms of the Tenth clause of said will of Albert Walker to 'those who were my legal representatives at the time of my decease and their heirs, per stirpes, share and share alike'? (d) Who is entitled to receive distribution of the one-sixteenth share of said trust estate distributable upon the death of said Mabel Walker under

the terms of the Tenth clause of said will of Albert Walker to 'Frank A. Balcom and his heirs, of Mansfield, Massachusetts, or in the event of his prior decease to any children that he may leave surviving him' said Frank A. Balcom having survived the testator and having predeceased said Mabel Walker without leaving any child surviving him?"

This court frequently has approved certain generally accepted rules of construction to be applied when it is called upon to determine the meaning of a will. First, it is the primary duty of the court to ascertain from the language of the will if possible the intent of the testator in disposing of his estate and to give effect thereto unless it is in violation of law. Second, in determining that intent the entire will must be construed together so as to form, if feasible, a consistent whole thus giving effect to every part of the instrument. Third, the court will ordinarily construe a will so as to avoid partial intestacy unless the language therein or a positive rule of law clearly requires a contrary construction. *Merrill* v. *Macomber*, 37 R. I. 458; *Rhode Island Hospital Trust Co.* v. *Egan*, 52 R. I. 384; *Industrial Trust Co.* v. *Saunders*, 71 R. I. 94; *Industrial Trust Co.* v. *Lathrop*, 72 R. I. 62; *Rhode Island Hospital Trust Co.* v. *Thomas*, 73 R. I. 277.

We have examined the will in the instant cause and are of the opinion it clearly shows that the testator's paramount concern was the future welfare of his daughter Mabel, his only living child. His other desires as expressed in his will were plainly secondary to her security in so far as he could provide for it. By creating in the tenth clause a trust of the residue he planned that she should have a suitable place in which to live for the rest of her life, congenial persons to care for her and to be her companions, and a sufficient income for her support and the upkeep of the home. On the termination of the trust he was interested in leaving the greater part of his residue to his daughter's issue, if she had any, and their children, but on the failure of such issue and children his provision

for the distribution of such portion of the residue of his estate, after her death, merely disclosed that he had no particular interest in his own relatives as such. In the above circumstances the bulk of his residuary estate was left in varying fractions to certain intimate friends and to a charity.

The questions propounded relate chiefly to the distribution of the estate. In respect to the first question, the testator's heirs at law, the administrator of the estate of Mabel Walker, and the executor under the will of Fannie E. Smith, a deceased relative, take the position that under the tenth clause of the testator's will, upon the death of Mabel Walker single and without issue, only seven eighths of the seven-eighths part of the trust estate then distributable were disposed of, and the remaining one eighth of such seven eighths passed by operation of law as intestate property to the testator's heirs and next of kin.

They base their claim on an alleged literal construction of the pertinent language used in the tenth clause, viz.,. "I direct that said seven eighths of said trust estate shall be disposed of as follows: One fourth ($\frac{1}{4}$) part thereof to my niece * * *." There is no question but that the fractional parts immediately thereafter disposed of by this provision of the will totaled seven eighths; but the question here is seven eighths of what? They argue that the word "thereof" refers to the seven eighths just mentioned with the result that actually only seven eighths of seven eighths of the residue in trust passed under that part of the will. They cite the cases of Champagne v. Fortin, 69 R. I. 10, and Wood v. Mason, 17 R. I. 99, as giving support to their view.

On the other hand those respondents, generally speaking, who were specifically named in the tenth clause as distributees of the seven eighths and their representatives contend that under that clause the testator intended to and in fact did dispose of seven eighths of his entire residuary estate which had been held in trust until the death

of his daughter. They urge that, when the whole clause and the complete plan of the will is considered, the word "thereof" clearly refers to the entire residue of the estate held in trust and not merely to seven eighths thereof, so that the fractions set out mean fractional parts of the whole trust estate.

In that connection they call attention to the fact that the testator specifically states that he is disposing of seven eighths of his trust estate. They also point out that later in the tenth clause of the will he gives directions to the trustees regarding the handling of the *"remaining* one eighth ($\frac{1}{8}$) part" of the trust estate during the life of the Drown sisters, definitely implying that seven eighths of the trust estate had previously been disposed of. (italics ours) In addition they maintain that the construction by their adversaries of the language in the tenth clause disposing of a seven-eighths interest in certain of his property is strained and technical and is not a "sensible" interpretation such as is approved in the case of *Rhode Island Hospital Trust Co.* v. *Egan, supra.* Finally the specific distributees contend that the position taken by them follows the general rules for the construction of wills, namely, that the entire instrument must be considered together, and that partial intestacy should be avoided unless a construction to the contrary is plain and unambiguous, or is necessarily implied. *Merrill* v. *Macomber, supra; Rhode Island Hospital Trust Co.* v. *Thomas, supra.*

Upon consideration it is our opinion that the above arguments advanced by the specific distributees are sound. In our judgment the construction of this portion of the will urged by them is sensible, is in accord with the clear intention of the testator as drawn from his entire will, and that there is therein no plain and unambiguous intent expressed or necessarily implied which requires an interpretation of the will leading to a partial intestacy. In our opinion the *Champagne* case and the *Wood* case cited by certain respondents are distinguishable and are not

applicable herein. In answer to the first question we find therefore that the specified fractional shares of the portion of the trust estate now under consideration are to be determined by taking the specified fractions of the *whole* of the trust estate, and not by taking such fractions of only seven eighths of such estate.

The second question propounded is whether the value of the house and land on Medway street, referred to as the homestead, and its furniture and furnishings should be included or excluded in determining the one-eighth share of the trust estate to be retained in trust until the death of Ida F. Drown. It apparently is not disputed that the house and its contents passed to the trustees under the tenth clause as part of the testator's residuary estate. It is also generally recognized that the house and its contents cannot well be disposed of after Mabel Walker's death as being included in the seven-eighths part of the trust estate then distributable, because of the provisions of the will directing that the Drown sisters be permitted to live in such house until the death of the survivor if either or both outlived Mabel Walker. The testator's heirs at law and next of kin and others who argued respecting the first question that there was a partial intestacy take the same general position in connection with the question now before us.

They contend in substance that the house and its furniture and furnishings, although part of the residue held in trust, are not included in either of the two distributions of trust property directed by the will, and that, as there is no provision therein directing their distribution, they pass by operation of law to the testator's heirs and next of kin. This group of respondents argue that when there is a trust of a residue, and the will makes no final disposition of part of the beneficial interest in the trust property, an equitable reversion in fee of such interest vests in the testator's heirs and next of kin on his death, and when prior interests in such property terminate it vests in possession. *Champagne* v. *Fortin, supra; First Trust & Savings Bank of DeKalb* v.

*Olson,* 353 Ill. 206. They also urge that under the will the one-eighth part of the residue in trust was to provide the entire expense and upkeep of the house, which was not income producing and could not contribute to its own maintenance, and that the testator did not intend that the house and its furnishings should be included in any way in the one-eighth part of the trust. Thus the contention of those respondents as to the second question is that the value of the property involved should be excluded in determining the one-eighth share of the trust estate.

However, other respondents, especially certain of those entitled to specific fractional shares under that portion of the tenth clause disposing of seven eighths of the trust estate, take a contrary view and maintain that the value of the house and its furnishings should properly be included in determining such one-eighth share. They contend that since the house and furniture were part of the residue in trust they must be included either in the seven eighths or the one eighth of the trust estate unless intestacy is found in respect to the final disposition of such house and furniture. In view of the fact that because of the nature and scheme of the testator's will the property involved clearly cannot in any reasonable or practical manner be included in the seven-eighths share, it appears that the question of alleged intestacy is controlling on this point.

We do not find it necessary to discuss the evidence relating to the value of the real estate, the furniture, or his personal estate at the time of the testator's death and now. An examination of the will itself, in our judgment, discloses the testator's intent to include the house and furniture in the remaining one-eighth part of the trust estate. In particular a careful reading of the last part of the tenth clause leads to that conclusion as being reasonable and sensible and also in general accord with the rule of construction to which we have hereinbefore referred respecting the avoidance of partial intestacy. *Industrial Trust Co.* v. *Colt,* 50 R. I. 252.

Moreover, we find in the will no clear intent on the part of the testator not to include the house and furniture in the final distribution of his estate. Such a clear intent and also an absolute failure to make a disposition of the house and furniture should appear before the court determines that they pass as intestate property. In our opinion such a situation does not exist under the will. The *Champagne* case and the *First Trust & Savings Bank of DeKalb* case are distinguishable by reason of the manner in which the wills under consideration in those cases were drawn. The property involved therein clearly could not by any reasonable construction pass under the wills then before the court. The reverse is the case in the will now before us. In answering the second question we are of the opinion that the value of the house, land, and the furniture and furnishings in question should be included in determining the one-eighth share of the trust estate to be retained in trust until the death of Ida F. Drown.

The third question asks who is entitled to receive distribution upon the death of Ida F. Drown of the one-eighth share of the trust estate. We shall answer that question generally by construing the pertinent portion of the testator's will. It provides that such distribution shall be by way of division "among those who were my legal representatives *at the time of my decease* and their heirs, per stirpes, share and share alike * * *." (italics ours) The meaning of the term legal representatives depends upon the manner of its use. *Casey* v. *Lockwood,* 24 R. I. 72. In the present instance it is our opinion that the testator used the words as meaning those who represented him at the time of his decease, in the sense of his distributees, that is, his heirs and next of kin. At that time his sole heir and next of kin was his daughter Mabel. The fact that she had a life interest in the trust estate would not necessarily destroy any right she had by operation of law or under his will as such heir and next of kin. Her remainder clearly was vested but was subject to the life estate of the

Drown sisters. *Kenyon, Petitioner,* 17 R. I. 149, 164; *Goodgeon* v. *Stuart,* 50 R. I. 6; *Starrett* v. *Botsford,* 64 R. I. 1.

However, one of the respondents Maude E. Sparne, an heir at law and next of kin of Mabel Walker on the maternal side, argues that by the above-quoted language from the tenth clause relating to the one-eighth share of the trust estate the testator disposed of all his estate not previously devised to the four heirs of his daughter at the time of her death as a group in equal shares. This respondent argues that she takes directly under the will of the testator and not by operation of law through his daughter, and that the reference to the distribution of the one-eighth share of the trust estate was in effect a residuary disposition of that estate. We are unable to agree with that contention.

The testator's express direction in his will was to divide, after the death of the Drown sisters, the one-eighth share among those who were his legal representatives, as we have construed that term, at the time of *his* death. Accordingly it is our opinion that Mabel Walker was the only legal representative of the testator at that time and as such, under the provision in his will, the one-eighth share of the trust estate became vested in her in interest, although not then in possession because of the outstanding life interest of the Drown sisters.

However, Mabel Walker died single, without issue and intestate during the life of Ida F. Drown. In our judgment in such circumstances the one-eighth share in which Mabel Walker received a vested interest under her father's will at the time of his death passes on her death to those who were her heirs and next of kin at the time of her decease, but will not come to them in possession until the death of Ida F. Drown. Such heirs and next of kin of Mabel Walker take the one-eighth share of the trust estate by operation of law only, directly under and in accordance with the provisions of the statutes of descent and distribution of this state

providing for the distribution of real and personal intestate property. They do not take directly under the testator's will which operated merely to pass to his daughter Mabel, as his only legal representative at the time of his death, a vested remainder in interest but not in possession in the one-eighth share of the trust.

The fourth and final question propounded to the court relates to the bequest of one-sixteenth part of the trust estate "to Frank A. Balcom and his heirs * * * or in the event of his prior decease to any children that he may leave surviving him." Frank A. Balcom survived the testator but predeceased Mabel Walker without leaving any child surviving him. Since he died after the testator the provisions of G. L. 1938, chap. 566, §7, have no application. The executor under the Balcom will, a respondent herein, contends that under the above provision of the will of Albert Walker, Frank A. Balcom received a vested remainder in the one-sixteenth part subject to be divested only if he died prior to Mabel Walker and left a child surviving. As this contingency did not occur the executor of his estate claims to be entitled to such part. He urges that the testator intended to invest Frank A. Balcom presently with the gift although its enjoyment might be postponed. *Aldrich* v. *Aldrich*, 43 R. I. 179.

On the other hand certain respondents argue that the gift of such one-sixteenth part failed and that it passed by operation of law to the testator's heirs and next of kin. Such respondents maintain that there remained outstanding from the time of the testator's death an equitable reversion in fee in his heirs and next of kin, subject to being divested on the happening of the contingencies described in the will. This group of respondents also points out that the express language of the gift of the one-sixteenth part emphasizes the contingency of Frank A. Balcom's interest. They contend that such language did not make a present bequest to him with a gift over to his children, but amounted to a gift with futurity attached to the substance thereof, since

the gift was to him *or* by substitution to any children he might leave surviving him in case of his prior decease. *Branch* v. *DeWolf,* 38 R. I. 395.

We recognize fully the general rule of construction, often applied by this court, that the vesting of remainders is favored and that a remainder will not be construed to be contingent in the absence of a clear intent on the part of a testator to that effect. *Rhode Island Hospital Trust Co.* v. *Beckford,* 67 R. I. 492. However, we are of the opinion that the express language used by the testator in this instance shows such a clear intent. The gift, which was in nature substitutional, was to take effect on certain conditions precedent which never took place. Moreover, in our judgment it was not a present gift but the substance thereof was in futurity.

We find, therefore, that the bequest was in the nature of a contingent remainder which in the circumstances failed. *Osgood* v. *Thomas,* 45 R. I. 189. It follows that the one-sixteenth part of the trust estate bequeathed under certain conditions to Frank A. Balcom did not vest in him or in any child of his, and is distributable as intestate property by operation of law and not under the will to the testator's heirs and next of kin. His daughter Mabel Walker was the only person in that category under the facts appearing herein and as she died intestate the share mentioned in the fourth question is payable to the administrator of her estate.

The parties may present to this court a form of decree in accordance with this opinion to be entered in the superior court.

*Swan, Keeney & Smith, Frederick W. O'Connell, Ernest A. Jenckes,* for complainants.

*Edwards & Angell, Elmer E. Tufts, Jr., John V. Kean, Sherwood & Clifford, Sidney Clifford, Raymond E. Jordan, Adler, Flint & Zucker, Walter Adler, Martin M. Zucker,*

*Charles V. Ryan, of* Massachusetts Bar, *Wilfrid E. McKenna, William S. Flynn, Swan, Keeney & Smith, Frederick W. O'Connell, Ernest A. Jenckes, Frank W. Campbell, of* Massachusetts Bar, and *Elmer S. Chace,* for various respondents.