239 A.2d 640.

Dorothy S. MacDonald *vs.* Edward P. Manning, Trustee, *et al.*

MARCH 11, 1968.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This cause was certified to this court by the superior court under G. L. 1956, §9-24-28, as amended, for the construction of the will of Philip G. Harris, late of the town of Burrillville, and instructions to the trustees thereunder. The late Mr. Harris died on May 15, 1962, leaving a will dated May 9, 1962. It is represented that all interested persons are parties defendant. Duly appointed representatives appeared for persons not in being or not ascertainable who have or may have an interest or who may be in the military service. Marilyn H., Suzanne S., and Clayton B. Wentworth, minor grandchildren of the testator and named defendants, are represented by a guardian ad litem. The state is represented by the attorney general.

The testator named defendant, Edward P. Manning, executor of his will and directed him to pay all his funeral expenses and just debts. He made a bequest to his daughter, Mary Ann Wentworth, of the family silver and the portraits of her husband and herself and stated that he was purposely excluding his daughter, and her children,

"* * * except as hereafter provided, from any other share in my estate inasmuch as I feel that she and her

family are quite self-sufficient and I am sure will always live comfortably."

He then created two separate trusts. The pertinent portions of the will read as follows:

"Third: I hereby bequeath to my daughter, Mary Ann Wentworth, the family silver and the portraits of her husband and herself and I purposely exclude my daughter, and her children, except as hereafter provided, from any other share in my estate inasmuch as I feel that she and her family are quite self-sufficient and I am sure will always live comfortably.

"Fourth: I give, devise and bequeath that portion of land with all buildings and improvements thereon, situated in the Town of Burrillville and consisting of approximately twenty two (22) acres with a dwelling house thereon, standing in my name in the Land Evidence Records in said Town of Burrillville, to Herbert L. Perry of Scituate, Rhode Island and Edward P. Manning of Cumberland, Rhode Island, as Co-Trustees, to have and to hold unto them, the said Herbert L. Perry and Edward P. Manning, and their successors in trust, but in special trust, however, upon the following terms and conditions:

"A. I direct that my trustees shall permit my former secretary, Dorothy MacDonald of Woburn, Massachusetts, so long as she shall live, to reside in and occupy the premises described hereinabove, namely, my dwelling house and the twenty two (22) acres, more or less, appurtenant thereto, and to use all household furniture and utensils, carpets, linens, plates, pictures, books, and other articles of every kind which shall, at the time of my death, be therein or thereon or ordinarily used in connection therewith, without paying any rent or other compensation therefor, except as hereinafter provided: provided that in the event she does not desire to live upon said premises then this clause shall become ineffective.

"B. Upon the decease of the said Dorothy MacDonald or in the event she has sooner removed from the premises described in this said trust, then the children

of my daughter then living either collectively or individually may reside upon said premises for the rest of their natural lives: provided, however, that said children shall give notice in writing within six (6) months of notification by the said trustees of the availability of said premises for their residence, of their desire to reside upon said premises and in the event that none of my daughter's children desire to live upon said premises or in the event any or all of them do live upon said premises and then decide not to live upon said premises, then Clause C hereinafter set forth shall become effective.

"C. When Clause B becomes ineffective, the trustees are to convey, within six (6) months, to the State of Rhode Island in fee simple, the premises described in this trust and said deed shall contain the following language: 'This conveyance is made for the express purpose of creating a charitable trust with fee in the State of Rhode Island for the benefit of the fire wardens and fish and game wardens and their staffs in the Woonsocket, North Smithfield, Burrillville and Smithfield areas and they may use said premises either for the purpose of a residence for fire wardens and fish and game wardens as aforesaid or for a meeting place for fire wardens and fish and game wardens as aforesaid.'

"Fifth: I hereby give, devise and bequeath my shares of stock in Buck Hill Forest, Inc., a Rhode Island Corporation, to Edward P. Manning and Herbert L. Perry as Co-Trustees, to have and to hold unto them, the said Edward P. Manning and Herbert L. Perry, and their successors in trust, but in special trust, however, upon the following terms and conditions:

"A. I direct that my trustees shall use the income of this my second trust created by this Will to pay the taxes and expenses of operation and upkeep of the premises described in the first trust created by this Will.

"B. To transfer for One $1.00 Dollar consideration in each instance, the legal and equitable title to three (3) shares of stock of said Buck Hill Forest, Inc. to Dorothy MacDonald, and to transfer for One $1.00 Dollar consideration in each instance, the legal and

equitable title to three (3) shares of stock of said Buck Hill Forest, Inc. to Herbert L. Perry, and to transfer for One $1.00 Dollar consideration in each instance, the legal and equitable title to three (3) shares of stock of said Buck Hill Forest, Inc. to Edward P. Manning, once a year for five (5) consecutive years, said years to commence with the year of my death. The stock so transferred shall not be subject to any of the provisions of this Will.

"C. Said trustees are to have sole authority and discretion regarding the voting rights of said stocks so held by them.

"D. In the event that said corporation is liquidated or sold the proceeds of said sale are to be used by the trustees in their absolute discretion for the purposes as outlined in this trust.

"E. Upon the completion of the first trust described herein, namely, at the time of the trustees deed to the State of Rhode Island, of the land described in the first trust, this second trust shall cease and the trustees are directed to sell said stock so held by them to the corporation at the book value and in the event said Buck Hill Forest, Inc. does not desire to purchase said stock, then said trustees are to vote to liquidate said corporation and the proceeds of said stock in either event shall be paid to the State of Rhode Island for the purpose of upkeep and maintenance of the premises described in the first trust herein.

"Sixth: I hereby give, devise and bequeath all shares of stocks and securities which I have not otherwise disposed of by this Will or on the face of such stock, to my said secretary, Dorothy MacDonald with the express condition that the principal and income be used to defray the expenses and maintenance of the premises described in the first trust herein, I being well aware that the Buck Hill Forest Inc. corporation will perhaps not realize any income for a number of years.

"Seventh: All the rest, residue and remainder of my property whether real, personal or mixed, I hereby give, devise and bequeath to my former secretary and good friend, Dorothy MacDonald."

After the testator's death, his will was admitted to probate and letters testamentary were issued to the named executor. During the course of the probate proceedings the executor learned that the liquid assets of the estate were not sufficient to meet the obligations of the estate. He was therefore required to petition the probate court for permission to sell the assets to pay the outstanding debts. The assets sold pursuant to the decree of the probate court included the land and dwelling which, along with the contents, constituted the corpus of the trust created by paragraph Fourth. After payment of the outstanding debts and probate expenses, the executor had a balance of $11,556.74 left over from the proceeds of the sale of the assets. Upon completion of the probate proceedings he paid over the balance to himself and his co-trustee, in their capacities as trustees under the testator's will.

The plaintiff, who was the testator's personal secretary, is one of the beneficiaries of the paragraph Fourth trust and also a specific legatee and residuary legatee under the will. Although set out in the statement of facts, paragraph Sixth of the will is not before us because the testator did not leave any shares of stock or securities at the time of his death. The forced sale of the corpus of the paragraph Fourth trust precipitated the filing of the instant complaint by the plaintiff. She alleges therein that defendants, Marilyn H., Suzanne S., and Clayton B. Wentworth, are the only children of the testator's only daughter; that since the real estate was disposed of, neither she nor the grandchildren are entitled to anything under the terms of the paragraph Fourth trust; that the trust created under paragraph Fourth, clause C, violates the rule against perpetuities and is therefore invalid; that the paragraph Fifth trust is conditioned upon the validity of the paragraph Fourth trust; and that, in the circumstances, as residuary legatee, she is entitled to the funds held by the trustees.

Answers were filed by all the named defendants and by the guardian ad litem who was appointed to represent the interests of unknown or unascertainable persons who might have an interest. The attorney appointed under the Soldiers' and Sailors' Relief Act filed a brief. In their answer, the defendant trustees, being in doubt as to the disposition they should make of the funds in their possession, posited the following questions for the determination of the superior court:

"1. Whether the provisions of Paragraph 4 of the will of Philip G. Harris create a valid trust.

"2. Whether the proceeds of the sale of the land which was the corpus of the trust now held by your Defendants should be applied in accordance with the terms of the said trust.

"3. Whether, if the said proceeds should be so applied, the Defendants should make payment to the State of Rhode Island under Section C of said Paragraph 4.

"4. Whether payment should not be made in accordance with Section C but should be made in accordance with Section A or B in Paragraph 4."

When the matter was reached in the superior court, the parties, by agreement, suggested that the superior court consider certifying the cause to this court for a construction of and 'instructions relative to the will. The superior court treated the cause accordingly, and, after hearing testimony as to the doubts of the trustees relative to the disposition of the fund in their possession, caused an order to be entered certifying the complaint and answers thereto to this court.

We address ourselves to the questions posed by the trustees' answer. In accordance with their duty, the attorneys representing the various interests have filed briefs and advanced arguments supporting conclusions most advantageous to their respective interests. Our primary obligation is to ascertain, if possible, the testator's dispositive intent

as expressed in his will and to give effect thereto unless it is in violation of law. *Carpenter* v. *Smith,* 77 R. I. 358, 364, 75 A.2d 413, 416.

The basic question presented for our determination is whether the provisions of paragraph Fourth create a valid trust. As it appears from the will, the testator owned a dwelling and contents located on a 22-acre parcel of land, which he left in trust upon certain terms and conditions to which we direct our attention.

We shall first consider the validity of paragraph Fourth, clause C, which directed the trustees to convey the premises in question to the state of Rhode Island in fee simple for the purposes therein stated.

It is stipulated by all concerned that unless clause C is charitable in nature, it violates the rule against perpetuities and is therefore void. *Sherman* v. *Baker,* 20 R. I. 446, 40 Atl. 11. The plaintiff contends that clause C is not a charitable trust while the defendant trustees, on the other hand, maintain that it is.

In our judgment the trust which the testator attempted to create in clause C is not a true charity and therefore fails as a charitable trust. While technical words such as trust, trustee or charity are not always essential to the creation of a charitable trust, such a trust may be given effect if the testator's language makes clear his intent to make a gift in trust for a public charitable purpose. *Town of Bristol* v. *Nolan,* 72 R. I. 460, 465, 53 A.2d 466, 469; *City of Providence* v. *Payne,* 47 R. I. 444, 452, 134 Atl. 276, 280.

Similarly, the presence of such language does not necessarily create a charitable trust if the gift is not actually charitable in nature. In *Jackson* v. *Phillips,* 14 Allen 539, 556, Mr. Justice Gray defined a charity as follows:

> "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons,

either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it is so described as to show that it is charitable in its nature."

In this case, the testator stated in clause C that the deed conveying the real estate should contain the following language: "This conveyance is made for the express purpose of creating a charitable trust * * *." We find, however, that this gift lacked a charitable purpose and therefore was not charitable in nature.

In *Kelly* v. *Nichols,* 17 R. I. 306, 21 Atl. 906, the testator sought to impress a charitable trust upon his homestead, directing the trustees to maintain the same as a place of reception and entertainment forever, for travelling ministers of the Orthodox Friends religion. In ruling that this gift was not charitable in nature, this court said at page 320, 21 Atl. at 908:

" * * * It is not a gift to a religious society, nor directly to religious objects, but only for hospitality; which is the exercise of benevolence and liberality rather than charity, as that term is used in law. If the gift be not to a charitable use, the court cannot make it such simply because it sees the testator hoped its effect would be to accomplish a charitable end. The books are full of cases where an indefinite charitable design was plain enough, but where the testator failed to make a gift to a definite charitable use. In such cases there can be no application of the doctrine of *cy pres.* * * * "

Likewise, in this case, testator left his property in trust to be used for the purpose of providing fire wardens, fish and game wardens and their staffs in the Woonsocket, North Smithfield, Burrillville and Smithfield areas with a place of residence or a meeting hall. However noteworthy

an aim that may have been, it suffers from the same infirmity as the purported charitable gift in *Kelly* v. *Nichols, supra.* Nor are we of the belief that it is a gift which lessens the burdens of government. The state has failed to show that it is required to furnish places of residence or meeting halls for fire, fish or game wardens. We, therefore, conclude that the testator's gift was one of benevolence and liberality rather than charity in the legal sense.

We next consider plaintiff's contention that, in view of the disposal of the corpus of the trust, neither she nor defendant grandchildren are entitled to anything under clauses A and B of paragraph Fourth. Clause B made the grandchildren life tenants of the premises in question, to take effect subsequent to the life tenancy created for plaintiff. We agree with the position taken by the guardian ad litem for the grandchildren:

> " * * * that where a trust is for several purposes, some valid and some invalid, it will be supported so far as it is good, provided such part is separable from the rest, and no violence will thereby be done to the testator's general intent."

*Bristol* v. *Bristol,* 53 Conn. 242, 257, 5 Atl. 687, 692; *Armington* v. *Meyer,* 103 R. I. 211, 236 A.2d 450. See also 1 Restatement, Trusts 2d, §65, at 176.

It is our opinion that the trusts created by clauses A and B are severable. The only question, however, is whether, on this record, clauses A and B remain valid, or whether they must be terminated because their purposes have become impossible of accomplishment as a result of the forced sale of the premises.

It is generally well settled that where a trust is validly created, and it subsequently becomes impossible or illegal to carry out the purposes of the trust, it will be terminated. 3 Scott, Trusts (2d ed. 1956), §335, p. 2440; 2 Restatement, Trusts (1935), §335, p. 1016.

548

We examine the will to ascertain, if possible, the testator's purpose or purposes, as evidenced by his general dispositive intent, in making the clause A and B provisions. It is clear from the provisions of paragraph Third of his will that he was not that concerned about providing his only daughter and her children with economic enrichments, for he was satisfied that she and her family were self-sufficient and would always live comfortably. Unlike *Industrial National Bank* v. *Colt*, 102 R. I. 672, 233 A.2d 112, in the case at bar there is no language in the will indicating that the testator desired to keep the premises in question "* * * in existence as long as possible," or to benefit only the plaintiff and the grandchildren. The testator's only purpose in making the clause A and B provisions was to afford plaintiff and the grandchildren the benefit of the use of the premises during their lives or as long as they desired the same pursuant to the provisions in clauses A and B. When the premises were sold for the payment of the testator's debts, it became impossible to carry out the clause A and B purposes of the paragraph Fourth trust and therefore the trust must be terminated.

We now consider the question of the disposition of the funds in the possession of the trustees. The plaintiff argues that because the trust is incapable of taking effect, there was a lapse as contemplated by G. L. 1956, §33-6-20, and consequently the proceeds in question should go to the residuary legatee under the will. For this proposition, plaintiff cites *R. I. Hospital Trust Co.* v. *Peck*, 40 R. I. 519, 101 Atl. 430; *Woodward* v. *Congdon*, 34 R. I. 316, 83 Atl. 433; *Peckham* v. *Newton*, 15 R. I. 321, 4 Atl. 758.

All three of the aforesaid cases were discussed in *Industrial National Bank* v. *Drysdale*, 84 R. I. 385, 125 A.2d 87. In that case, a testamentary trust was established for the benefit of a mission which, subsequent to the testator's death, ceased to be in existence. We concluded that at the

testator's death, title to the trust res vested absolutely in the trustee; that subsequent to the testator's death it became impossible to administer the trust in accordance with its terms; that under such circumstances it could not be concluded that the trust res had not been well disposed of by the testator or that it was a lapsed legacy which must fall into the residue; that, on the contrary, in the legal sense of the law of wills there can be no lapse where the property bequeathed has once legally vested in the trustee; that consequently the devolution of the trust res out of the hands of the trustee can only be effected by law rather than by the dispositive provisions of the testator's will; and that the law effects such devolution in such an instance by imposing a resulting-trust for the benefit of the testator's next of kin.[1]

This court in *Drysdale, supra,* distinguished *Peck, Congdon* and *Newton, supra,* from the case before it by indicating that each involved a bequest which was incapable of taking effect at the testator's death.

In the case at bar, title to the trust res passed to the designated trustees under the will upon the decease of the testator. Only upon administering the estate in question was it determined that there were not sufficient liquid assets to meet the debts of the testator and the obligations of the estate; that the gift of real estate to the trustees for the benefit of the designated beneficiaries under the will must abate in order to satisfy such debts and obligations. See *Haslam* v. *de Alvarez,* 70 R. I. 212, 38 A.2d 158.

Subsequent to *Drysdale,* however, this court decided *Rhode Island Hospital Trust Co.* v. *Votolato,* 102 R. I. 467,

---

[1]To reach this conclusion, this court relied upon *Champagne* v. *Fortin,* 69 R. I. 10, 18, 30 A.2d 838, 842, where we said that a resulting-trust of this nature "* * * does not arise by reason of any actual intention of the testatrix but by reason of a lack of any intention on her part that the trustee should have a beneficial interest if the trust expressed in the devise failed."

231 A.2d 491. That case involved an intervivos trust and this court therein limited the application of *Drysdale, supra,* to its facts, to wit, where there has been a failure of an operating testamentary charitable trust which had vested in the trustee and where there is no general charitable intent evidenced by the testator. We said that the general rule is that found in 2 Restatement, Trusts 2d, §411, and quoted the following:

"§411. General Rule

"Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality.

"Comment:

" * * *

"*b. Transfer inter vivos.* Where the owner of property gratuitously transfers it inter vivos upon a trust which fails, the transferee holds it upon a resulting trust for the transferor.

" * * *

"*k. Subsequent failure of trust.* The rule stated in this Section is applicable not only where an intended trust fails at the outset but also where a trust is created which subsequently fails. Thus, if the owner of property transfers it in trust to pay the income to one beneficiary for life, and on his death to convey the principal to others, and the disposition of the principal is on a contingency which does not occur, there is a resulting trust for the transferor or his estate on the death of the life beneficiary."

The facts in the case at bar do not permit the application of the *Drysdale* rule. We are concerned here with the failure of a non-charitable trust while *Drysdale,* as we have pointed out previously, is limited to charitable trusts. Accordingly, we hold that 2 Restatement, Trusts 2d, §411, and

its applicable comment, which reads as follows, is pertinent to the facts of this case:

"*c. Transfer by will.* If real property is devised upon a trust which fails and there is no provision in the will effectively disposing of the residue of the testator's real property, the devisee holds it upon a resulting trust for the heir of the testator.

" * * *

"If real or personal property is devised or bequeathed upon a trust which fails and there is a provision in the will effectively disposing of the residue of the testator's real and personal property, the devisee or legatee, if he takes title to the property, holds it upon a resulting trust for the residuary devisee or legatee."

Since the testator has failed to express the intention that a resulting trust should not arise upon the failure of the trust in question and since he has provided in his will for the disposition of his residue, we conclude that the trustees hold the proceeds in question upon a resulting trust for plaintiff, the sole residuary legatee under the testator's will.

Finally, we inquire into the trust created by the provisions of paragraph Fifth, clauses A, C, D, and E. The manifest purpose of this trust was to provide income for the maintenance and upkeep of the premises mentioned in paragraph Fourth of the will. The stock bequeathed under paragraph Fifth was also sold pursuant to the decree of the probate court for the payment of testator's debts. The proceeds from such sale are included in the funds held by the trustees. We believe that since it became impossible to carry out the purpose of this maintenance trust, it also terminated at the threshold and should be treated in the same manner in which the paragraph Fourth trust was treated.

It should be noted that our conclusion relative to the paragraph Fifth trust does not pertain to the shares of stock bequeathed under clause B of paragraph Fifth. Clause B is severable from the other provisions of paragraph Fifth

and can therefore be treated separately. Since the testator directed that the clause B transfers of stock should not be subject to any of the provisions of the will, they are valid transfers and therefore pass to the legatees mentioned in clause B.

For the reasons stated we instruct the co-trustees to pay over the proceeds in their custody as trustees to the plaintiff, free and clear of the trusts mentioned in paragraphs Fourth and Fifth of the will.

The parties may present a judgment to the court in chambers in accordance with this opinion.

*Jordan, Hanson & Curran, William A. Curran,* of counsel, for plaintiff.

*Albert B. West, Herbert F. DeSimone,* Attorney General, *W. Slater Allen, Jr.,* Special Assistant Attorney General, *Frederic A. Charleson,* Guardian Ad Litem, *Edmund J. Carberry, Jr.,* Guardian Ad Litem, for defendants; *Marvin A. Brill,* Attorney for Persons in Military Service.