INDUSTRIAL TRUST COMPANY EX. *vs.* AGUSTA ALVES *et al.*

APRIL 25, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

RATHBUN, J.   This cause is a suit in equity brought by the executor of the will of Samuel P. Colt for instructions relative to the construction of a portion of the eighteenth clause of said will.   The case being ready for hearing for final decree upon bill, answers, replication and proof, has been certified to this court, as provided in Section 35, Chap. 339, G. L. 1923, for final determination.

Said eighteenth clause contains language as follows: "I give and bequeath the sum of one thousand (1000) dollars . . . to each servant in my employ at the time of my decease who has been so employed for at least six months."

The respondents severally contend that they were servants in the testator's employ at the time of his decease who had "been so employed for at least six months."

In accordance with the terms of said clause of the will the executor paid to each of the testator's household servants a legacy of one thousand dollars but refused to make payment to any of the respondents, each one of whom was at some

time employed by the testator chiefly in the management of his farm although some of them, at times, worked as directed either at the farm or the testator's house. The executor admits that at the time of the testator's decease and for six months prior thereto fifteen of the respondents were in the testator's employ. The executor contends that the other respondents were either not employed by the testator at the time of his decease or had not at said time been in his employ for a period of six months. The executor further contends that no one of the respondents was, within the meaning of the language of the will, a *servant* of the testator.

The testator died August 13, 1921, possessed of an estate amounting to several million dollars. His homestead estate, which was known as Linden Place, was in the thickly settled part of the town of Bristol. In 1912 he purchased several farms located in said town and converted them into one farm, which was thereafter known as the Colt Farm, comprising about five hundred and fifty acres in a single plot. All of the land was formerly owned by the testator's ancestors. In the development of the farm expensive buildings were erected for keeping horses, cattle, hogs and poultry and extensive drives were laid out and kept in repair. These drives the public were invited to use. The main entrance from the highway to the farm was through an elaborate arch which was embellished by the testator's coat-of-arms. The testator erected on the farm a large casino where he was accustomed to entertain his friends. Linden Place was supplied from the farm with milk, cream, butter, eggs, poultry and vegetables. Products of the farm were sold to residents of the town of Bristol but it is clear that he did not conduct the farm for profit. There was a very large deficit each year and he was apparently content that there should be. By his will the testator made available for the upkeep of Linden Place and the Colt Farm all of the net income from his other real estate located within said town. The will gives to one of his sons the right to occupy Linden Place and to the other the right to occupy the Colt Farm.

It is apparent from the will that the testator had a very strong desire that the two estates should remain as long as possible in the possession of his descendants. Most of the regular help at the farm were supplied with uniforms, the buttons of which bore the testator's coat-of-arms. When he was in Bristol he spent the greater part of his time at the farm. On going to Bristol he visited the farm before going to Linden Place and on leaving Linden Place usually went to the farm before leaving Bristol. The greater part of the laundry work for Linden Place was done at the farm laundry. When he entertained either at the farm casino or at Linden Place the farm employees assisted. We think it is clear that his use of the farm and his manner of conducting it show that he regarded the farm and Linden Place as parts of one establishment constituting his home.

The executor admits that each of the following named respondents was in the employ of the testator at the time of his decease and had been so employed for at least six months prior thereto in the capacities noted below: Henry De W. Allen as farm foreman having charge of the planting of crops and of the cattle and dairy; Agusta Alves and John Andrea, teamsters, laborers and assistants in cattle barn upon the farm; Clara L. Allen, cook and housekeeper at the employees' boarding house located upon the farm; John Armstrong, fireman and mechanic having charge of the boilers, machinery and tools located upon the farm; Bernard Burns having charge of the horse barn and farm horses on the farm; Joseph Erwin, Hermann A. Goff and Willard F. McCann, milkmen and assistants in the dairy barn; Thomas W. Galvin in charge of the poultry and poultry house; Emma Heard, laundress at the farm and chambermaid for quarters of the employees living at the dairy barn; Charles Miska in charge of the creamery and milk route; Joseph Peter, road worker on the farm; Manuel Plaza, truck gardener at the farm; and Winifred V. Scott, bookkeeper at the farm and had charge of all bills for Linden Place. In connection with their duties as above noted it appears that

at times some of the above named respondents performed certain other duties for the testator.

The sole question as to the above named respondents is whether they can be deemed "servants" within the meaning of that word as used in the will.

Respondents Hills, Tobin and Baker were carpenters by trade. The testimony shows conclusively that Hills was not in the testator's employ at the time of his decease and had not been for a period of more than six months prior thereto. Although Baker and Tobin happened to be working for the testator on the day of his decease neither was regularly employed by him. The testator would send for them when their services were needed and they came if not otherwise engaged.

The respondent Theresa Doran testified that at the time of the testator's decease and for five years prior thereto she was regularly employed by the National India Rubber Co. and that she assisted her uncle, William A. Doran, in connection with the farm pay roll, for which service she received three dollars per week. The work was done in the evening. How much time was devoted to this work does not appear but it is clear that the work was done in a business office and not at the farm or at Linden Place. All of her time during the business portion of the day was devoted to another master. Her status was that of a clerk who rendered some casual service. See *Metcalf* v. *Sweeney*, 17 R. I. 213.

Respondent Sotel at the time of the testator's death was working at the greenhouse at Linden Place. It is admitted that at that time he had been working there regularly for a period of three months but the executor contends that Sotel was not regularly employed by the testator during the three months immediately preceding the time when he commenced working at the greenhouse. He testified that he had worked for the testator for the past thirteen years and that for the past nine years he had worked for no one else. This testimony was not contradicted. The farm pay roll indicates that he did not work full time during the months of Feb-

ruary and March and the first week in April, 1921, but the testimony shows that the outdoor employees received no pay for the days that were too stormy for them to work and there is no evidence as to the condition of the weather on the days for which, according to the farm pay roll, Sotel received no pay. Usually during the months of February and March there are very many days when the weather is unsuitable for outdoor labor on a farm. We think that the employment was vastly different from that of Hills, Tobin and Baker, whose employment was casual and who, from time to time, worked for various persons including the testator. The testimony fairly shows that Sotel was regularly employed by the testator for some years immediately preceding his death. It does not appear that Sotel was ever discharged and if he did lose as much time during February and March, 1921, as the executor contends, he did not thereby lost his status as one regularly employed. He was at all times subject to the call of the testator. See *Abbott* v. *Lewis*, 77 N. H. 94; *Re Mitchell's Estate*, 186 N. Y. Supp. 666.

As to respondent Thompson, who is a man well advanced in years, it was admitted that he was working for the testator at the time of the latter's decease and had been so working for more than six months but the executor contends that Thompson was not exclusively employed by the testator and that during all the time he did work for the testator he was in the employ of the American Oyster Company as a watchman. For several years Thompson served the testator as a watchman at the Colt Farm. His duties were to prevent visitors and others from parking automobiles on the lawn or doing any other damage or committing any nuisance about the driveways, and also to have an oversight of the beach and prevent the removal of sand therefrom. For this service he was paid two dollars per week. The witnesses for the executor testified that Thompson always had something to report. Two witnesses testified that Thompson was employed by the American Oyster Company. He admits that he was at one time employed by said company

as a watchman but he testified that he had been employed by no one except the testator for a period of nine years immediately preceding the testator's decease. Perhaps the two witnesses above referred to intended to state that they knew that Thompson was employed by the American Oyster Company during all of the time that he was in the testator's employ. If they did so intend, and their testimony is not very clear upon this point, it does not appear how they obtained the information. Thompson knew better than anyone else except the officers of the American Oyster Company whether he was employed by said company during the time he was working for the testator, but no one connected with said company was called to testify. Nothing appears which indicates that he was not continuously on duty as watchman for the testator's estate. While from the testimony the question can not be determined as a certainty we are inclined to believe that Thompson had been exclusively in the testator's employ for a period of six months immediately preceding the testator's decease.

We now come to the question whether those respondents who were in the testator's employ at the time of his decease and had been so employed for a period of six months were "servants" of the testator within the meaning of that word as used by him in his will. The question is, what did the testator mean when he used the word "servant?" The question naturally arises whether the testator considered said respondents servants in the limited sense or merely employees. We have already stated that his use of the farm and his manner of conducting it show that he regarded the farm and Linden Place as parts of one establishment constituting his home. We think the testator regarded the farm employees as his servants. Their children were carried to and from school in the farm truck; the employees who did not live on the farm were carried to the farm in the morning and to their homes at night. At Christmas and Thanksgiving he donated turkeys to the married men. He supplied those working regularly at the farm with uniforms. The farm employees and their families were invited to

partake of the clambakes given at the casino. When said employees assisted at the clambakes and also when the testator was showing guests around the farm the blue working uniform was exchanged for a white uniform. The buttons on all of the uniforms bore the testator's coat-of-arms. A uniform bearing a family coat-of-arms is a badge of servility. . The order requiring such uniforms to be worn when guests and visitors were at the farm is a strong indication that the testator considered the wearer a servant and not a mere employee. The word "servant," even when not used in the broad sense, as interchangeable with the word "employee," embraces many classes and unless qualified by some such word as household or domestic includes outdoor as well as indoor servants. See *Re Ravensworth*, 2 Ch. (1905) Rep. 1; *Re Drake*, 2 Ch. (1921) 99; *Thrupp* v. *Collett*, 26 Beav. 147; *Ginter* v. *Shelton*, 102 Va. 185.

The testator had been trained in the law. He was at one time the attorney general of this state. We can assume that he was familiar with the use of the word "servant." If he did not intend to include as objects of his bounty all of those whom he regarded as his servants he easily could, and doubtless would, have used language limiting the bequests to such class of servants as he desired to benefit.

In construing the testator's will it is our duty to consider in the light of facts known to him the words which he used. If we interpolate words or resort to strained construction we are not interpreting his will but making one for him.

Our conclusions are that neither Hills, Tobin, Baker nor Theresa Doran is entitled to a legacy under the eighteenth clause of the will and that each of the other respondents was at the time of the testator's decease a servant in his employ who had been so employed for a period of at least six months and is entitled to a legacy of $1,000 and the complainant is advised accordingly.

*Eliot G. Parkhurst, Kenneth J. Tanner, Edwards & Angell,* for complainant.

*Wm. T. O'Donnell, Waterman & Greenlaw, Edwin J. Tetlow,* for respondents.