Robert B. Dresser *et al., Trs. vs.* Mary A. S. Booker *et al.*

NOVEMBER 9, 1949.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'Connell, J.   This bill in equity was brought by the trustees of the trust created by the fifth clause of the will of Frank A. Sayles, late of the city of Pawtucket in this state, and prays for a construction of certain provisions of his will and for instructions relative to questions which have arisen with respect to the trusts under the fifth and seventh clauses of the will.   In general these questions relate to

the duration and termination of the trust of the testator's homestead estate under the fifth clause of his will, the disposition to be made of the funds held by the trustees thereunder, and the payment of certain taxes and expenses incident to the execution of said trust.

The named respondents are all the persons now living who have any possible interest in the trust created by said fifth clause or in the questions concerning which instructions are requested. Answers were filed by all respondents not under legal disability, except two, against whom decrees *pro confesso* were entered. Guardians *ad litem,* duly appointed to represent all other respondents and all contingent interests, have filed answers submitting such interests to the protection of the court. Thereafter testimony was taken, and the cause being ready for hearing for final decree has been certified to this court for determination under general laws 1938, chapter 545, §7.

The material facts submitted in evidence before the superior court may be summarized as follows. Frank A. Sayles died on March 9, 1920, leaving a written instrument purporting to be his last will and testament and five codicils thereto. The will and codicils were admitted to probate by the probate court of the city of Pawtucket on March 31, 1920. On appeal therefrom the decree admitting said will to probate was affirmed by the superior court on June 25, 1920, subject to certain provisions of the decree referring to an agreement of compromise authorized and approved by that court on May 25, 1920.

By the second clause of said will the testator devised and bequeathed his homestead estate in Pawtucket to his wife Mary D. A. Sayles for her life, so long as she should remain unmarried, free and clear from the payment of taxes, assessments and the expense of repairs and insurance. The homestead estate consisted of two parcels of land, namely, the property situated at the corner of East and Sayles avenues, bounded on all sides by a wall and containing about fourteen acres of land, and an adjacent parcel

of land on the westerly side of East avenue, hereinafter referred to as the Newell land. The testator's wife Mary D. A. Sayles survived him. She did not remarry and occupied the homestead estate until her death on July 27, 1946.

By the fifth clause of his will, the testator appointed three trustees to hold the homestead estate, after the decease or remarriage of his wife, for the benefit of such of his children "as shall not have married," to permit them as long as they remained unmarried to have the use, occupation and enjoyment of that property, free of rent, taxes, assessments and expenses of insurance and repairs. The testator further provided in said clause that when all his children shall have married or the last of them who had not married shall have died, then upon the happening of either event and after the decease or remarriage of his wife,.

"the Trustees of my Homestead Estate shall stand seized of the same to the use, in fee simple, of all and every the child or children of mine then living, including the issue of every child then deceased, but so that such child, if only one, shall take wholly, and such children, if more than one, shall take equally, and such issue of each deceased child shall take, by representation, the share which his, her or their parent would have taken if then living, to the use, in fee simple, of such child, children and issue respectively, and if more than one, as tenants in common; and in case there shall be living at the decease of the last of my children who shall not have married no child or more remote issue of mine, my wife having then deceased or married, then the Trustees of my Homestead Estate shall, in that event, stand seized of said estate, to the use in fee simple of my nephew Maurice K. Washburn, if he shall then be living; and if my said nephew shall then have deceased, then I will and direct that my Homestead Estate shall fall into and constitute a part of my residuary estate."

The fifth clause further provided that with the consent of the child or children for the time being entitled to the use and occupation of the homestead estate, or if such child or children should be a minor or minors, then with the

consent in writing of the guardian or guardians of such child or children, the trustees should have power to lease the homestead estate and to pay over the rents received therefrom to the child or children entitled for the time being to the use and occupation thereof, and if more than one child should be so entitled, then to such children in equal shares.

In the seventh clause of his will the testator, after naming as trustees the same persons named as trustees under the fifth clause, and after directing them to take the care and management of the appointed estate and to collect and receive the income and to pay the expenses incident to the care and management thereof, provided that

"out of the residue of said rents, income, dividends and profits (said residue being hereinafter referred to as 'said net income') my trustees shall pay, during the life of my wife, so long as she shall remain unmarried and during the continuance of the trusts of my Homestead Estate declared in the Fifth Clause hereof, the taxes, assessments, expenses of repairs, premiums of insurance *and other expenses and charges incident to the care and protection of my Homestead Estate,* including the care and maintenance of the greenhouses, turf, trees and shrubbery thereon, *and to the execution of the trusts relating to my Homestead Estate.*" (italics ours)

Stephen O. Edwards, named in the will as one of the trustees, predeceased the testator, who by the third codicil to his will named Kenneth F. Wood in his place and stead. Charles O. Read, James R. MacColl and Kenneth F. Wood, named in the will or the third codicil thereto as trustees of all the trusts thereunder, accepted said trusts and acted as such trustees until their respective deaths. Successor trustees were subsequently appointed and when any vacancy occurred thereafter a successor was appointed, so that the complainants are the duly appointed and acting trustees under all the trusts of the will.

By a decree of the superior court entered on November 6, 1929, the then trustees under the fifth clause of testator's

will were authorized to sell and convey to the city of
Pawtucket their remainder interest in a portion of the home-
stead estate, being a portion of the Newell land, and in
accordance with the decree the trustees on December 13,
1929 conveyed said interest to the city and by the same deed
the widow of the testator conveyed her life interest to said
city. On July 27, 1938 the superior court entered its decree
authorizing the complainants, as trustees under the fifth
clause of the will, to sell and convey to the city of Paw-
tucket their remainder interest in an additional portion of
the Newell land, and in accordance with the decree, on
August 25, 1938, they conveyed their interest to the city
and by the same deed the widow of the testator conveyed
her life interest to said city.

The complainants as such trustees have held the pro-
ceeds of the two sales in accordance with the decrees
entered in said causes, which provided that they should
hold the same in the place and stead of the portion of the
homestead estate so conveyed, and with the same powers
of investment, reinvestment, sale, lease, partition and
exchange and payment to the parent, guardian or guardians
of a minor, which were possessed by the trustees under the
eighth clause of testator's will, the net income from said
proceeds of sale and the investments and reinvestments
thereof to be paid to the person or persons from time to
time entitled under the will to the *use, occupation and
enjoyment of the homestead estate*, and the principal thereof
to be paid eventually to the person or persons entitled under
the will to the fee simple interest in the homestead estate
and in the shares and proportions prescribed by said will.
Upon the death of the widow of the testator on July 27,
1946, the homestead estate vested in possession in the
complainants. The only child of the testator who has not
married is the respondent Hope Sayles, a person of full age
under guardianship.

On January 4, 1947, the complainants filed in the superior
court a bill of complaint alleging that it was inadvisable

and not in the interests of Hope Sayles that she occupy the homestead estate, and that her guardian had no intention whatever of permitting her to occupy it. They further alleged that the expense of maintaining and caring for the homestead estate was great; that the expenditure of the trust funds for this purpose would constitute an unnecessary and wanton waste thereof if it was not to be occupied; that any rent that could be obtained from a lease of the property would be far less than the cost of maintenance and upkeep; and that it would be advantageous to the trust estate and to the beneficiaries to have the unsold portion of the homestead estate sold.

On May 12, 1947 the superior court entered a decree authorizing and empowering the complainants (1) to tear down the mansion house and other buildings, except the gardener's cottage, on the homestead estate; (2) to plat the unsold portion thereof into house lots; (3) to dedicate, lay out or convey, with or without compensation, such portions of the land for streets or ways as to them should appear desirable, either in connection with such platting or independently; and (4) from time to time to sell said lots and gardener's cottage at public or private sale, either as a whole or in parcels, for such prices, subject to such restrictions and upon whatever terms and conditions generally as the complainants, as trustees, might deem advisable. Pursuant to the authority granted by the court the complainants as such trustees have had the buildings, with the exception of the gardener's cottage, torn down. They have sold that cottage and had it removed from the grounds, have had the land platted into lots and streets laid out, and have sold all of said lots and the purchase price has all been paid. The last lot was sold on June 10, 1948.

As of September 29, 1948 the complainants as trustees under the fifth clause of testator's will had on hand assets having a value of $237,499.21, being the net proceeds of the various sales of the homestead estate as set forth above. Of this sum $237,221.73 represents principal and $277.48 is

income applicable to the period after July 27, 1946, the date of the death of the testator's widow. Certain taxes, expenses of repairs, premiums of insurance and other expenses and charges incident to the care and protection of the homestead estate have been paid by the trustees under the seventh clause of the will, subsequent to the death on July 27, 1946 of the testator's widow and prior to September 30, 1948. Some of these expenditures were made before July 27, 1946, but applied to the period after that date, while others were paid after said date and applied to the period thereafter. All of such expenditures, amounting to $15,419.10, are set forth in the first two columns of complainants' exhibit 2 attached to the deposition of Joel D. Austin, a certified public accountant and estate manager for the trustees.

The first two decrees of the superior court above referred to provided that the full amount of the purchase price should be held by the trustees under the fifth clause of testator's will, "the net income from said purchase price * * * to be paid to the person or persons from time to time entitled under said will to the *use, occupation and enjoyment of said Homestead Estate,* and the principal thereof to be paid eventually to the person or persons entitled under said will to the fee simple interest in said Homestead Estate, and in the shares and proportions prescribed by said will." (italics ours) But the decree of May 12, 1947, by authority of which the trustees sold their remaining remainder interest in the homestead estate, did not contain a direction as to how and for what purpose the proceeds of such sale should be held. It merely contained a provision that the trustees should have leave to apply to the court at any time for further orders and directions with reference thereto.

Complainant trustees request instructions from this court on the following questions which arise with respect to the trusts under the fifth and seventh clauses of testator's will.

"1. Whether, in view of the fact that it is impossible longer to carry out the original purposes of the testator to have his Homestead Estate maintained by your complainants, as such Trustees, for the use, occupation and enjoyment of such of his children surviving him as shall not have married, free of rent, taxes, assessments and expenses of insurance and repairs, so long as and whenever they or any one or more of them shall remain unmarried and see fit to occupy the same, and to have his said Homestead Estate be and remain the home, from time to time, of such of his children as shall not have married, so long as and whenever they or any of them shall desire to occupy the same, the trusts under said Fifth Clause have terminated, and, if so, on what date.

2. If the answer to the first question is that said trusts have not terminated, whether they may now be terminated.

3. If the answer to either the first or second question is in the affirmative, to what persons and in what shares should your complainants, as such Trustees, distribute the funds held by them under said Fifth Clause.

4. If the answers to both the first and second questions are in the negative, whether the income from the funds held under said Fifth Clause should be paid from time to time to the guardian of Hope Sayles, the only daughter of said testator who has not married.

5. If the answers to both the first and second questions are in the negative and the answer to the fourth question is also in the negative, what disposition your complainants, as such Trustees, should make of such income.

6. To what extent and for what period the taxes and expenses incident to the execution of the trusts under said Fifth Clause are to be paid by the Trustees under said Seventh Clause and by the Trustees under said Fifth Clause, respectively."

Answers to the above questions have become important to the trustees and of concern to them as well as to all other parties to the instant cause, not because of any particular

difficulty in construing the language of the fifth clause of testator's will, but because of the action of the trustees in seeking, obtaining and acting upon authority from the superior court to sell the homstead estate, a contingency not provided for by the testator and perhaps not even contemplated by him. Had the trustees pursued the usual course and filed for ultimate certification to this court a bill for construction of the will and for instructions as to whether such real estate could properly be sold and, if so, how the proceeds should be applied, the necessity for the filing of the instant bill would not have arisen. We are therefore now confronted with a situation created by the action of the trustees themselves in disposing of the real estate which composed the corpus of the trust and converting it into cash pursuant to decrees of the superior court from which no appeal was taken.

Answering the first question propounded by the trustees, we are of the opinion that the trust created by the fifth clause of testator's will has not yet terminated. Its date of termination was fixed in the will as the date when all of testator's children shall have married, or the last of his children who shall not have married shall have died, in either case his wife having also deceased or remarried. Such contingency has not yet arrived as testator's daughter Hope Sayles is still living and unmarried.

Since Hope Sayles, the only remaining unmarried child of the testator, is still living, it cannot be determined until her death who will be the ultimate beneficiaries under the trust created by the fifth clause or whether the trust thereby created shall fall into and constitute a part of testator's residuary estate, to be distributed in accordance with the terms of the residuary clause of testator's will. If, because of the action of the trustees, the trust of the homestead estate should now be declared to have terminated, an entirely different set of beneficiaries might receive the proceeds of said trust than was contemplated by the testator and provided for in his will. We are of

the opinion that by a sale of the homestead estate and the substitution therefor of the proceeds of the sale thereof by virtue of the unappealed decrees of the superior court, the trustees cannot accelerate the date of termination of the trust as expressly provided in the will and thereby deprive those persons, who might be living at the time of the contingency contemplated and provided for by the testator, of their interests and estate.

In *Chapin, Petitioner,* 148 Mass. 588, there was a trust of real estate to continue for ten years. The real estate was sold under partition proceedings before the ten years provided in the will and the proceeds were paid to the trustees. The court held at page 591: "The rule is well settled, that in such case the proceeds of the real estate are to be held upon the same trusts as those upon which the real estate was held. The money takes the place of the real estate, and is affected by the same trusts as if it had remained specifically real estate." In 4 Bogert Trusts Part 2, §999, p. 479, the rule is laid down as follows: "A sale of the trust property under a power of sale destroys the trust as to the thing sold, but substitutes another res, namely, the proceeds of the sale." And we think the same rule applies whether the sale of real estate is made under a power of sale contained in the trust instrument or under authority of the court.

We answer the first and second questions in the negative and amplify the second answer by the statement that the trust of the homestead estate can be terminated only at the time specified in testator's will and on the contingencies therein provided. Since neither the first nor second question is answered in the affirmative, it is unnecessary to answer the third question.

In connection with the fourth question, it is recalled that the first two previously-mentioned decrees authorized the sale of certain parcels of the homestead estate, the substitution of the proceeds of such sales for those portions of the homestead estate in the trust, and the payment of the net

income of such proceeds, investments and reinvestments thereof, to the person or persons from time to time entitled under said will to the *use, occupation and ejoyment of the homestead estate.* By virtue of those unappealed decrees and in view of our conclusion as to the first and second questions, it follows that the answer to the fourth question is in the affirmative, and therefore it is unnecessary to answer the fifth question.

As to the sixth question, we are of the opinion that all of the expenses of administration of the homestead estate trust created by the fifth clause of the testator's will should be paid out of the fund and estate created by the seventh clause of his will, excepting the necesssary expenses of the sale of the first two parcels of the homestead estate authorized by the superior court. All interested parties were represented at these hearings and no appeal has been taken from the final decrees entered in such proceedings. Therefore by virtue of the language of the decrees entered therein, we think that the expenses incident to such sales, including the tearing down of the buildings, platting and laying out of the tracts involved, preparation of deeds and other usual expenses in securing and carrying out the authority granted by the superior court, should be allocable to the trust created by the fifth clause of testator's will, but that all other expenses of administration to date and until the final termination of the trust created by the fifth clause should be paid by the trustees under the seventh clause of testator's will.

On November 21, 1949 the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*Edwards & Angell, Robert B. Dresser, Ronald B. Smith,* for complainants; *Sheffield & Harvey, Davis, Polk, Wardwell, Sunderlund & Kiendl, William R. Harvey, J. Russell Haire,* for respondent Mary A. S. Booker; *Tillinghast, Collins & Tanner, Westcote H. Chesebrough, Harold E.*

*Staples, Clinton T. Crolius, Hinckley, Allen, Tillinghast & Wheeler, Hayward T. Parsons, S. Everett Wilkins, Jr., Robert F. Pickard,* for various respondents; *Fred A. Otis,* guardian *ad litem* of Hope Sayles and counsel for Laurence B. Rand, guardian of estate of Hope Sayles; *Francis B. Keeney,* guardian *ad litem* of certain respondents and representative of contingent interests and persons not in being or not ascertainable, *Swan, Keeney & Smith,* counsel.