**233 A.2d 112.**

INDUSTRIAL NATIONAL BANK OF PROVIDENCE, *Trustee vs.*
RUSSELL G. COLT *et al.*

AUGUST 18, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This complaint[1] was brought in the superior court by Industrial National Bank of Providence (now Industrial National Bank of Rhode Island) in its capacity as trustee under the will of Samuel Pomeroy Colt,[2] late of the town of Bristol, for the construction of certain portions of the twenty-seventh clause of the latter's will and for instructions to the trustee relative thereto. The cause was heard on an amended complaint, answers and proof, and as soon as the cause was ready for final judgment in the superior court, it was certified to this court for determination in accordance with the provisions of G. L. 1956, §9-24-28, as amended.

The plaintiff has represented, and we have not been otherwise persuaded, that all known parties who may have any interest have been joined as parties defendant. Guardians ad litem have been appointed for all infant defendants, for any person who is or may be in the military service, and for persons not in being or not ascertainable having contingent interests which may be affected by the determination in this cause. A default judgment was entered pursuant to rule 55 of the rules of civil procedure against certain defendants.

---

[1]Although this proceeding was commenced in the superior court prior to January 10, 1966, the effective date of the new rules of procedure of the superior court, since the order of certification was filed thereafter, we shall use the terminology of the new rules.

[2]We shall hereinafter refer to the Samuel Pomeroy Colt as "Col. Colt" and/or "the testator."

674

Colonel Colt died on August 13, 1921. His will[3] was duly admitted to probate by the probate court of the town of Bristol on September 6, 1921.

## The Pertinent Provisions of the Will[4]

Colonel Colt devised and bequeathed all his Bristol real estate and his residuary estate to plaintiff's predecessor, Industrial Trust Company, as trustee under separate trusts established under the 27th and 28th clauses of his will.

## The Twenty-seventh Clause

By the 27th clause he devised and bequeathed all the real estate in the town of Bristol owned by him at his death to his·trustee, in trust, to take possession, hold and manage the same, to pay the expenses of taxes, assessments, insurance premiums and repairs of all said real estate and the compensation of agents and employees necessary for the safekeeping and upkeep of his Homestead Estate and all his land adjoining and all the personal property on said premises, and also of his farm, called the Colt Farm, in Bristol, and the livestock and personal property thereon, ·and to permit his children and grandchildren to use and occupy the Homestead Estate and farm as a place of residence, free of rent. His son, Russell, was given the first right to occupy the Homestead Estate, and his son, Roswell, the first right to occupy the Colt Farm.

---

[3]Various portions of Col. Colt's will have been considered by this court in nine reported cases, namely:

Industrial Trust Co. v. Colt, 45 R.I. 334, 121 A. 426 (1923)
Industrial Trust Co. v. Alves, 46 R.I. 16, 124 A. 260 (1924)
Industrial Trust Co. v. Colt, 136 Atl. 771 (1927)
Colt v. Industrial Trust Co., 50 R.I. 242, 146 A. 628 (1929)
Industrial Trust Co. v. Colt, 50 R.I. 252, 146 A. 857 (1929)
Industrial Trust Co. v. Wilson, 58 R.I. 378, 192 A. 821 (1937)
Industrial Trust Co. v. Wilson, 61 R.I. 169, 200 A. 467 (1938)
Industrial Trust Co. v. Flynn, 74 R.I. 396, 60 A.2d 851 (1948)
Industrial National Bank of Providence v. Morey, 86 R.I. 15, 133 A.2d 724 (1957)

[4]Clauses 27, 28 and 29 are appended hereto as Appendix A.

Clause 27 provides that the trust is to continue for the lives of Col. Colt's children and grandchildren until all but one of them shall have died, at which time the trustee was to convey, transfer and deliver to such last survivor, discharged of all trusts, the Homestead Estate and the Colt Farm, with the personal property therein and thereon, and Col. Colt's other real estate then held by the trustee. Colonel Colt then declared it to be his special request that his descendants to whom the Homestead Estate and the Colt Farm should belong as an estate in fee simple should not sell or alienate the same. As to his other real estate in Bristol, he directed that his trustee hold the same in trust and, from the net income therefrom, apply so much thereof as was necessary for the expenses attending the care, management and custody of the Homestead Estate and the Colt Farm.

He further directed his executor to set apart one half of his residuary estate in trust to apply the net income therefrom, or so much as was necessary, toward the expenses of the care, management and custody of the Homestead Estate and the Colt Farm. He also directed his trustee to apply any surplus of the net income from said one half of his residuary estate in the manner provided in the 28th clause of his will with reference to the income of the residuary estate to be held by the trustee. He further directed that upon the termination of the trust concerning his real estate in Bristol, the said one half of his residuary estate should fall in and become a part of the other half of his residuary estate, to be divided and distributed or held as provided in the 28th clause.

### The Twenty-eighth Clause

By the 28th clause, Col. Colt devised and bequeathed the remaining one half of his residuary estate, in trust, to divide the same into six equal shares, one share each to be transferred to his son, Russell, his son, Roswell, and his

brother, LeBaron, discharged of all trust. He directed that the remaining three shares be held by the trustee to pay the net income in equal shares to his two sons and his brother during their lives and, upon the decease of any of them, to pay to the surviving child or children of such deceased son or brother, for his, her or their natural life or lives, the share of said net income to which said deceased son or brother would have been entitled if living, and upon the decease of such child or children of his sons and brother, to transfer to the child or children of such deceased child or children, per stirpes the proportionate share of the trust estate, discharged of all trust.

### The Twenty-ninth Clause

By the 29th clause he authorized his executor and trustee to sell any of his property, except the Homestead Estate and the Colt Farm.

### The Pertinent Family Facts

Colonel Colt was survived by his wife, by two sons, Russell G. and Roswell C., by his brother LeBaron B. Colt, and by four grandchildren, viz., defendants Samuel Colt, Ethel Colt Miglietta and John D. Colt, children of Russell, and defendant Elizabeth C. Stansfield (formerly Elizabeth C. Morey), a child of Roswell. Other grandchildren, namely, Byron Colt, who died on June 11, 1965 and defendants, Caldwell C. Colt and Melba Colt Delmouzos, were born after Col. Colt's death.

In *Colt* v. *Industrial Trust Co.*, 50 R. I. 242, 245, 146 A. 628, 630, one of the questions presented related to the meaning of the word "grandchildren" as used in the first sentence of the 27th clause. This court held "* * * that the testator meant by his 'grandchildren' only those who were living at the time of his death and that he did not intend to include any child who might be born to his sons after his death."

That holding is now the law of this will. *Industrial National Bank* v. *Morey*, 86 R. I. 15, 133 A.2d 724.

Colonel Colt's son, Russell, died in 1960, survived by three children, defendants Samuel Colt, Ethel Colt Miglietta and John D. Colt, and by a grandson, defendant John D. Miglietta. By his will Russell left the residue of his estate to his widow, defendant Gwendolyn Mary Gray Colt.

Colonel Colt's son, Roswell, died intestate in 1935. He was survived by the following children: Byron Colt and defendants, Elizabeth C. Stansfield and Caldwell C. Colt. A posthumous daughter, Melba Colt (now defendant Melba Colt Delmouzos) was born. Roswell was also survived by his wife, defendant Melba P. Colt.

Colonel Colt's brother, LeBaron, died in 1924. He was survived by three daughters and three children of his deceased son, LeBaron C. Colt.

For the purposes of this case, we do not deem it necessary to indulge in any further discussion of the family facts. We have discussed only such family facts as we believe are pertinent to the issues raised by this complaint. It suffices to say that all parties defendant base their claims on family connections related in one way or another to Col. Colt and/or his sons or brother.

### Other Pertinent Facts

All real estate owned by the testator and located in Bristol, other than the Homestead Estate and the Colt Farm, has been sold and the proceeds deposited in a special trustee's account. The Larned House, one of the residential buildings located on the Colt Farm, was seriously damaged by fire in 1955 and was subsequently sold. The proceeds of the insurance and of the sale have been deposited in the trustee's special account. In 1956 the town of Bristol condemned a 26-acre tract of land comprising a portion of the Colt Farm for town beach purposes. The proceeds of

this condemnation have also been deposited in the trustee's special account.

The net income under the 27th clause has always been more than sufficient to meet the expenses of the care, management and custody of the Homestead Estate and the Colt Farm.

On or about August 2, 1957, while the legal title to the Colt Farm was in the trustee, defendants Samuel Colt, Ethel Colt Miglietta, John D. Colt, and Elizabeth C. Stansfield, the four grandchildren who survived Col. Colt, entered into an agreement with one Daniel A. Marwell for the sale of the Colt Farm. This agreement has never been performed. Mr. Marwell died intestate on August 26, 1963. His widow, his daughter and the administrator of his estate have been made parties to this action, not because they are involved in the matter of the construction of Col. Colt's will, but because they may have rights which may be affected by our decision in this case. The validity or invalidity of the agreement in question is not an issue in this action.

### The Condemnation of the Colt Farm

On August 3, 1965, the state of Rhode Island condemned and took in fee simple the Colt Farm for public purposes. The state has paid the trustee the sum of $441,155.25, representing 75 per cent of the state's offer for the condemnation, pursuant to the trustee's application therefor. The trustee has filed in the superior court a petition for the assessment of damages in its behalf as trustee and "in behalf of all persons entitled to any estate or right in or interested in any part of the land or other real property" condemned. This petition is pending in the superior court.

The condemnation of Colt Farm by the state precipitated the bringing of the instant complaint seeking a construction of the 27th clause and instructions relative to the effect thereon of the condemnation. On October 27, 1965, the

trustee filed an amended complaint positing the following questions:

"(1) Should the Trustee distribute the proceeds of the condemnation of the Colt Farm and, if so, to whom, and in what proportions?

"(2) If such proceeds are not to be distributed now, should the Trustee continue to hold the proceeds in trust until all but one of the testator's grandchildren living at his death have deceased and then distribute such proceeds to the survivor?

"(3) If the Trustee is to continue to hold said proceeds in trust, what disposition should the Trustee make of the income from such proceeds?

"(4) To what funds should the expenses of this suit, including the expenses and counsel fees of respondents under Section 9-14-24 of the General Laws, be charged?"

On January 17, 1967, an order of certification was filed in the superior court and entered by the clerk thereof certifying the cause to this court.

After the papers were filed in this court, defendant Melba P. Colt filed a motion to remand the case to the superior court until plaintiff could amend the complaint to allege that it was in possession of all the funds to be derived from the "alleged" condemnation of the Colt Farm. After hearing we denied the motion without prejudice to the right of defendant Melba P. Colt to renew such motion at the hearing on the merits. We have examined the memoranda of law filed by opposing counsel relative to the merits of this motion and hold that there is no merit in the arguments made in support thereof. We therefore deny the motion to remand without further discussion.

The only issue raised by this action involves the proceeds of the condemnation of the Colt Farm. In accordance with their duty, the attorneys representing the various interests have filed briefs and advanced arguments supporting interpretations and conclusions most advantageous to their re-

spective clients. Counsel for defendants Caldwell C. Colt and Melba Colt Delmouzos have succinctly summarized the alternative legal arguments submitted to us as follows:

"A. The 'substitute *res*' theory proposed by each of the testator's four grandchildren who were alive at his death. This theory sub-divides into an argument that the proceeds should now be divided among the four grandchildren and the arguments that the proceeds should be held for the surviving grandchildren, with the present income to be distributed among the four grandchildren.

"B. The 'resulting trust' theory, proposed by the testator's grandchildren, other than the above-referred to four and by the widows and the estates of the testator's two sons. They argue that the Colt Farm trust was prematurely terminated, in whole or in part, for failure of purpose as a result of the condemnation and that the condemnation proceeds (and possibly the other assets of that Trust) should be distributed as intestate property of the testator. This theory sub-divides into those who wish the proceeds to be considered real property and those who wish the proceeds to be considered personal property, as well as those who think that the testator's intestate takers should be determined as of the date of his death and those who think that they should be determined as of the date of the condemnation. Grandchildren Caldwell C. Colt and Melba Colt Delmouzous [sic] also argue that the 27th Clause Residuary Trust, the maintenance trust for the Colt Farm, has also been prematurely terminated in whole or in part for failure of purpose, by virtue of the failure of the Colt Farm Trust.

"C. The 'residuary clause' theory proposed by various members of the line of Lebaron Colt, the testator's brother, who argue that the proceeds should be thrown either into the 28th Clause Residuary Trust or in equal shares into that Trust and the 27th Clause Residuary Trust."

Our primary obligation is to ascertain, if possible, the testator's dispositive intent as expressed in his will. As the

court stated in *Carpenter* v. *Smith,* 77 R. I. 358, 364, 75 A.2d 413, 416:

> "This court frequently has approved certain generally accepted rules of construction to be applied when it is called upon to determine the meaning of a will. First, it is the primary duty of the court to ascertain from the language of the will if possible the intent of the testator in disposing of his estate and to give effect thereto unless it is in violation of law. Second, in determining that intent the entire will must be construed together so as to form, if feasible, a consistent whole thus giving effect to every part of the instrument. Third, the court will ordinarily construe a will so as to avoid partial intestacy unless the language therein or a postive rule of law clearly requires a contrary construction."

A reading of clause 27, in the context of the will as a whole, shows, in our judgment, that the testator's paramount dispositive intent in establishing the clause 27 trust was not, as some contend, to perpetuate a memorial for himself, but rather to further provide for the welfare of his two sons and the four grandchildren who were living at his death. This is true even though (1) in clause 27 he makes a special request that his "* * * descendants to whom said Homestead Estate and said Farm shall belong as an estate in fee simple shall not sell or alienate the same," and (2) in clause 29 he withholds from his executor the power of selling the Homestead Estate and the Colt Farm.

While we agree that Col. Colt desired to keep the Homestead Estate and Colt Farm in existence as long as possible, we believe, as the court did in *Colt* v. *Industrial Trust Co.,* 50 R. I. 242, 247, 146 A. 628, 630, that "The preservation of the Homestead Estate and the Farm for the surviving son or grandchild of the testator was the reason for the 27th clause of his will." The preservation of the Homestead Estate and the Colt Farm for the welfare of his sons and grandchildren is further evidenced by the provision in

the 27th clause setting aside one half of his residuary estate in trust, to apply the net proceeds therefrom toward the expenses of care and management of the Homestead Estate and the Colt Farm. Finally, had the testator intended to perpetuate the Colt Farm as a memorial to himself, he could have left it to the town of Bristol in perpetuity, in the manner of his bequests in trust to the town of Bristol, Warren and Barrington in the 3rd, 4th, and 10th and 11th clauses of his will.

The testator's language in clause 27, when read in the light of the will in its entirety, evidences an intent, insofar as the Homestead Estate and the Colt Farm are concerned, to benefit only six people, namely, his two sons and the four grandchildren who were living at his death. Although there is nothing in the will indicating that at the time he executed his will, the testator contemplated the possibility of condemnation proceedings, it is our opinion that the substitution of the condemnation proceeds for the Colt Farm as the trust res under the 27th clause is consistent with the paramount dispositive intent of the testator. To hold otherwise would in our judgment violate the clear intent of the testator to set aside the Colt Farm for the exclusive benefit of his sons and four grandchildren.

The "substitute res" theory has been recognized by this court in prior cases involving sales of real estate. In *Rhode Island Hospital Trust Co.* v. *Harris,* 20 R. I. 408, 409, 39 A. 750, 751, the court held:

> "We are of the opinion that as the real estate was sold by the trustees * * * not in pursuance of any direction by the testator but merely for the purposes of the trust, its proceeds are to be treated as real estate and are to be distributed among the persons who would have been interested in the real estate had it not been sold."

*Dresser* v. *Booker,* 76 R. I. 238, 69 A.2d 45, involved a court-authorized sale of real estate held in trust. The court in *Dresser* cited with approval a Massachusetts case, name-

ly, *Chapin, Petitioner*, 148 Mass. 588. The *Dresser* court said at page 247, 69 A.2d at page 49:

"In *Chapin, Petitioner*, 148 Mass. 588, there was a trust of real estate to continue for ten years. The real estate was sold under partition proceedings before the ten years provided in the will and the proceeds were paid to the trustees. The court held at page 591: 'The rule is well settled, that in such case the proceeds of the real estate are to be held upon the same trusts as those upon which the real estate was held. The money takes the place of the real estate, and is affected by the same trusts as if it had remained specifically real estate.' In 4 Bogert Trusts Part 2, §999, p. 479, the rule is laid down as follows: 'A sale of the trust property under a power of sale destroys the trust as to the thing sold, but substitutes another res, namely, the proceeds of the sale.' And we think the same rule applies whether the sale of real estate is made under a power of sale contained in the trust instrument or under authority of the court."

See also 2 Scott, Trusts (2d ed.) §131, p. 978, which contains the following statement:

"If under the terms of the trust there is no equitable conversion, but the trustee sells the land, the proceeds will be disposed of as though the land had not been sold. This is true not only where the trustee commits a breach of trust in selling the land, but also where under the circumstances it was proper for him to sell it. This is true, for example, where he was forced to sell the land, as for instance where it is taken on eminent domain."

See also Bogert, Trusts & Trustees (2d ed.) §187, p. 277, where the author states:

"Where property held under a trust is taken in eminent domain proceedings, the beneficiary's interest in the res is wiped out, and it is believed that the theory generally employed is that in effect compensation is paid for an estate or interest which the beneficiary had in the realty involved."

We do not agree with the theory that a resulting trust arose when the Colt Farm was condemned. See *State* v. *Federal Square Corp.,* 89 N. H. 538, 3 A.2d 109. See also 2 Restatement of Trusts 2d §411 g., p. 336, where the various situations to which the rule of a resulting trust applies are set forth as follows:

> "The rule stated in this Section [that a resulting trust arises upon the failure of an express trust] is applicable where the intended trust fails because no beneficiary is named; because the intended beneficiary is non-existent; because the intended beneficiary cannot be ascertained; because the intended beneficiary is not properly designated; because the intended beneficiary is incapable of taking the beneficial interest; because the intended beneficiary disclaims; because the intended trust is invalid on the ground of remoteness."

None of these situations is present in the case at bar. The cases cited by counsel who argue a failure of trust are not in point because they involve factual situations wherein the beneficiaries no longer or never existed. See *Hopkins* v. *Grimshaw,* 165 U.S. 342, 17 S. Ct. 401; *Champagne* v. *Fortin,* 69 R. I. 10, 30 A.2d 838; and *Industrial National Bank* v. *Drysdale,* 83 R. I. 172, 114 A.2d 191.

We come now to the question of what should be done with the condemnation proceeds and the income earned therefrom. The answer to this question also depends upon the testator's intent, which must be ascertained, if possible from the language of the will read as a whole. *Carpenter* v. *Smith, supra.*

It is clear from the language of clause 27 that the testator intended the term of the Colt Farm trust to continue "* * * for and during the natural lives of said children and grandchildren until all but one of them shall have deceased * * *." The trust is measured by the lives of the testator's four grandchildren who were living at his death. See *Colt* v. *Industrial Trust Co.,* 50 R. I. 242, 146 A. 628, for statements of the court concerning the question of the term of the trust.

The condemnation of the Colt Farm destroyed the trust res, but did not terminate the trust itself. The purpose of the trust is capable of being carried out and continues with the substituted res for the benefit of testator's four grandchildren who were living at his death; the condemnation proceeds retain the character of realty and are to be held upon the same trust as that upon which the Colt Farm was held. As the court said in *"In Chapin, Petitioner, 148* Mass. 588," which was cited with approval in *Dresser* v. *Booker, supra,* " '* * * The money takes the place of the real estate, and is affected by the same trusts as if it had remained specifically real estate.' "

We believe that the rationale of the court in *Dresser* v. *Booker, supra,* applies with equal force here, and we therefore conclude that the trustee should continue to hold the proceeds in trust until all but one of the testator's grandchildren living at his death have deceased and then distribute such proceeds to the survivor. Indeed, the law of Col. Colt's will is that the trust will continue until there is left but one "* * * surviving son or grandchild of the testator * * *." *Colt* v. *Industrial Trust Co., supra,* at page 247, 146 A. at 630.

The next question relates to the distribution of the income from such proceeds. Since we have concluded that the money takes the place of the real estate, and is affected by the same trusts as if it had remained specifically real estate, we believe that the testator's intent can be given full effect by directing that the income of the condemnation proceeds be paid in equal shares to the grandchildren of the testator who were living at his death until all but one of them has deceased. See *Dresser* v. *Booker, supra.*

Any other conclusion would violate the testator's basic purpose in establishing the clause 27 trust. We find no language in the will indicating any intent that any part of the proceeds or income should spill over into either the 27th or 28th residuary clauses. Nor do we find any merit in the

contention that the income should be used for the Homestead Estate.

Although the questions posited by the complaint do not refer to what should be done with the proceeds of the fire insurance and sale of the Larned House, or with the proceeds of the condemnation by the town of Bristol of the 26-acre tract of land, both of which were part of the Colt Farm, we believe that such proceeds should be treated in the same manner as the proceeds from the condemnation by the state of the Colt Farm.

As we have already stated, the validity or invalidity of the purchase and sale agreement between the four grandchildren and the late Mr. Marwell is not an issue in this action and requires no further consideration. See *Industrial National Bank* v. *Colt,* 101 R. I. 488, 224 A.2d 900.

The final question presented for our determination relates to the payment of the expenses of this action and what funds are to be charged for the same, including the expenses and counsel fees of defendants under G. L. 1956, §9-14-25, as amended.[5]

Under clause 27 the trustee is under the duty to execute the trust in accordance with the testator's directions and instructions; these included the management of the trust res. This litigation affects the management of the trust res established in clause 27 and in our judgment the expenses of such litigation are necessary expenses of managing the trust. We conclude therefore that such expenses are within the contemplation of the testator's directions that the trus-

---

[5]"Expenses and counsel fees paid out of decedent's or trust estate.—In any civil action or other proceeding, wherein construction of a will or trust deed or any part thereof is asked, there may be allowed to each of the parties defendant brought in by such action or other proceeding, applying therefor, such reasonable sum for expenses and on account of counsel fees as the court in which such case is pending shall deem proper; such allowance shall be taxed as costs in the cause and be paid out of the estate or fund in the hands of the complainant concerning which estate or fund the construction is asked."

tee use the funds in the clause 27 residuary estate in the management of the trust property set up in said clause.

For the reasons stated we instruct the plaintiff to hold the proceeds in trust until all but one of the testator's grandchildren living at his death have deceased and then distribute such proceeds to the survivor and, in the meantime, to distribute the income from such proceeds in equal shares to such grandchildren.

Additionally, we authorize the plaintiff to pay to the parties defendant pursuant to the provisions of §9-14-25, as amended, such reasonable sum for expenses and on account of counsel fees as the superior court shall deem proper and we direct the plaintiff to charge such payments to the twenty-seventh clause residuary estate.

The parties may present a judgment to the court in chambers in accordance with this opinion.

JOSLIN, J., dissenting. While I agree that the condemnation proceeds should be held in trust in place of the Colt Farm, I cannot subscribe to the decision that corpus distribution should be made to the last to survive of those grandchildren. That conclusion is apparently premised upon a rule of construction that under the substitute res theory the proceeds of a conversion must be affected by the same trusts as were the realty. Rules of construction, however, should not be immutable. They are intended to be invoked only if the testatorial intention is otherwise unascertainable; they should not be called upon when what the testator contemplated is evident; nor should they be relied upon when they overrule a disclosed contrary dispositive plan. *Manufacturers National Bank* v. *McCoy*, 100 R. I. 154, 212 A.2d 53, 55; *Rhode Island Hospital Trust Co.* v. *Hooker*, 101 R. I. 12, 14, 219 A.2d 772, 774. I find a contrary dispositive intent and, therefore, instead of deferring payment of the proceeds until the death of next to the last of the grandchildren, I would distribute the fund in equal shares to

those of Colonel Colt's grandchildren now in being who were living at the time of his death.

Insofar as the Farm was concerned, Colonel Colt had mixed purposes. He neither intended to nor did he create a perpetual memorial. This he could easily and legally have done. Instead, he intended and he provided that the benefits of the Farm which he and his forebears had enjoyed should be shared equally by all of his grandchildren, and that upon the death of next to the last of them the fee should pass to the survivor. By a special provision, moreover, he requested that the taking survivor and his descendants should never "sell or alienate the same." That disposition makes clear that his wishes were to preserve the many-acred family homestead situated on the shores of Mount Hope Bay in the same condition as he and his ancestors before him had known it, and that he desired that it continue in existence, not as a memorial, but so that his descendants might enjoy its benefits for a period even beyond that which was legally possible.

If these were the motivating considerations for the twenty-seventh clause — and the majority by adopting the substitute res theory agree that they were — then the deferral of corpus distribution was not purposed upon benefiting that particular grandchild who by reason of good health, a strong constitution, or chance might survive all others, but was designed as a means of preserving the status of the Farm for as long a period of time as possible for the benefit of all of the testator's descendants. That this is so is implicit in the rationale of *Colt* v. *Industrial Trust Co.*, 50 R. I. 242, 146 A. 628, where in denying a request by the clause 27th beneficiaries for a termination of the trust and a distribution of the assets, the Court as then constituted based its decision upon what it found to be a special testamentary purpose and intention to preserve the Farm for the maximum permissible period for the benefit of the testator's descendants, rather than upon a dispositive plan

to benefit only the survivor of named children and living grandchildren. If the intent and purpose had been to benefit such survivor, then permission to terminate and distribute would have been granted, inasmuch as all of the grandchildren, including, of course, whichever one will survive, had joined in the request for authority to terminate.[1]

Condemnation has now made the Colonel's primary intent and purpose incapable of achievement, an eventuality he neither contemplated nor specifically provided for, and in such circumstances it becomes the Court's duty to determine whether it can fairly and reasonably be said that he had an overall plan of distribution which is applicable in this contingency. If one can be found, it should control, and there is no need for resort to a rule of construction.

Colonel Colt, as the Court said in *Colt* v. *Industrial Trust Co., supra,* "* * * was prominent in the social, political and business life of the State, a man of vision, big deeds and generous impulses," at 246, 146 A. 630. He was "devoted to his family and wished to see them happy and prosperous," at 247, 146 A. at 630. Speculation or reliance upon chance were anathematic to him. His will bears testimony to this and in its last clause he urged his beneficiaries not to "speculate in any manner" and advised them that "Speculation, besides unfitting one for regular occupations, does not pay and is almost certain to end in disaster."

It is unthinkable, in my judgment, that a testator so obsessed with what to him were the evils of speculation

---

[1]The conclusion expressed in the supplemental brief filed in that case by the guardian of three of the grandchildren is of equal significance now. He said then, "The trust is now of no benefit to anybody and, if carried out in strict accordance with its terms, will in all human probability be of no benefit to anybody until in the far distant future all the trust property is conveyed to the last survivor of the class, when he will be too old to get much real enjoyment from it. The plan proposed, if carried out, will bring the trust to an end in an orderly manner and with a result that will be fair to all concerned and to the advantage of every person interested under the trusts of the will."

would have disposed of a portion of his estate worth more than $500,000 at the time of his death in 1921 in such a manner as to create the possibility that a brother might hope for the early decease of his sister in order that he and his family rather than she and hers might benefit under their grandfather's will.

The dispositive provisions of the will, moreover, rather than disclosing an intention which places a premium upon survivorship or longevity as among or between members of a class, reveal that the Colonel wished to treat his children and their respective descendants equally. His residual trust is exemplary of an overall plan to give equal treatment to each of his children and their descendants, rather than to reward the longest-lived at the expense of the others. In that clause he provided what in *Industrial Trust Co.* v. *Flynn*, 74 R. I. 396, 410, 60 A.2d 851, 858, we said was a clear "formula"; viz., "* * * the income from a one-third share to each of his sons and brother for life, as the first life tenants; and then for life in equal shares to as many children as would survive each first life tenants, as the second life tenants; and then to distribute a proportionate share of the principal to the child or children, as the case may be, of each second life tenant."

In my judgment the distribution of the residuary trust demonstrates an overriding estate plan to benefit his grandchildren equally without dependency upon chance, and for that reason I would distribute the fund equally among the surviving grandchildren now living.

## APPENDIX A

Twenty-seventh. I give, devise and bequeath to said Industrial Trust Company and its successors all the real estate in said Town of Bristol owned by me at the time of my decease, to have and to hold the same in special trust for the uses and purposes hereinafter expressed, that is to say: To take possession of, hold and manage the same, to pay the expenses

of taxes, assessments, insurance premiums and repairs, of all of said real estate, and in addition to such expenses the compensation of such agents and employes as may be necessary for the safekeeping and and upkeep of my Homestead Estate in said Bristol, built by my grandfather George DeWolf in 1810, including therewith the stables, garage and other buildings thereon, and all my land adjoining, and all the furniture, plate, paintings, statuary, and personal property of all kinds in and about the premises, and also of my Pappoosequaw Farm, now called "Colt Farm" in said Bristol, and the live stock and all personal property thereon and to permit my children and grandchildren to use and occupy said Homestead Estate and said Farm as a place of residence free of rent, my son Russell to have the first right to occupy said Homestead Estate and my son Roswell to have the first right to occupy said "Colt Farm," for and during the natural lives of said children and grandchildren until all but one of them shall have deceased, when my Trustee shall convey, transfer and deliver to such survivor, discharged of all trust, my said Homestead Estate and said Farm, with the personal property therein and thereon, and also my other real estate in said Town of Bristol then held by my Trustee under the provisions of this trust, to have and to hold the same to him or her, as the case may be, his or her heirs and assigns forever. And it is my special request that my descendants to whom said Homestead Estate and said Farm shall belong as an estate in fee simple shall not sell or alienate the same. And as to my other real estate in said Town of Bristol, my Trustee shall stand seized and possessed of the same in trust to hold and manage the same, with power and authority to renew or extend any leases, where I hold only a leasehold interest, and from the net income, rents and profits derived from said other real estate, to apply so much thereof as may be necessary for the expenses attending the care, management and custody of my Homestead Estate and my said Farm, as hereinbefore provided. And as such net income, rents and profits may not be sufficient to provide for said

expenses. I direct my Executor to set apart one-half of my residuary Estate to be held by my Trustee in special trust to apply the net income thereof or so much as may be necesssary toward the expenses of the care, management and custody of my said Homestead Estate and said Farm, and also to supply, so far as necessary, the balance of income required to make good any deficiency in the net income from the securities set apart for the annuities named in Clause Second of this Will; and any surplus of such income to apply as provided in the Twenty-eighth clause of this Will with reference to the income of the residuary Estate to be held by my Trustee. And upon the termination of the trust hereinbefore expressed concerning my real estate in said Town of Bristol, said one-half of my residuary estate shall fall in and become a part of the other half of my residuary estate to be divided and distributed or held as provided in clause Twenty-eighth of this will.

Twenty-eighth. All the rest, residue and remainder of my estate, real and personal, (meaning and intending thereby the one-half of my residuary estate not set apart as provided in the preceding Twenty-seventh section of this Will), of which I shall die seized and possessed, or to which I shall be in any manner entitled, including any estate of which I shall have the power of appointment by will I give, devise and bequeath to said Industrial Trust Company and its successors in trust for the uses and purposes hereinafter expressed and declared of and concerning the same. That is to say: my Trustee shall make an inventory of all said rest, residue and remainder real and personal estate, and shall place values on the same and the respective parts thereof to the best of its skill and understanding; and my Trustee shall then divide said residuary estate into six equal parts or shares, each of which shall contain an equal proportion as near as may be of all bonds, shares of capital stock in corporations and other securities included in said residuary estate. One of said six parts or shares of said residuary estate shall be conveyed, transferred and made over, discharged of all trust, to my son Russell

Griswold Colt, and one of said parts or shares shall be conveyed, transferred and made over, discharged of all trust, to my son Roswell Christopher Colt. One of said six parts or shares shall be conveyed, transferred and made over, discharged of all trust, to my brother LeBaron Bradford Colt. The remaining three parts or shares of said residuary estate shall be held by my Trustee upon the trusts hereinafter expressed. My Trustee shall pay over semi-annually or oftener in its discretion the net income arising therefrom in equal shares to my two sons, Russell Griswold Colt and Roswell Christopher Colt and my brother LeBaron Bradford Colt, for and during the terms of their natural lives; and upon the decease of any of them should such deceased son or brother survive me, otherwise from and after my decease, my Trustee shall pay to the surviving child or children of such deceased son or brother for and during the term of his, her or their natural life or lives the share of said net income to which such deceased son or brother would be entitled if living. And upon the decease of such child or children of my said sons and my said brother, as the same shall respectively happen, my Trustee shall convey, transfer and set over to the child or children of such deceased child or children, per stirpes and not per capita, his, her or their proportionate share of this trust estate, as an estate vested in fee simple, discharged of all trust. And in case of failure of the limitations and objects of the preceding trust, that is to say, if either or both of my said sons or my said brother shall die leaving no child surviving, or if leaving child or children surviving, such last named child or children shall die leaving no child or children surviving him, her or them, as the case may be, then my Trustee shall convey, transfer and set over, discharged of all trust, the share or shares of said trust estate to which any such grandchild or grandchildren would have been entitled if living, to the person or persons who at the time of ascertaining such failure of the aforesaid objects of said trusts would have been my heir or heirs-at-law according to the statutes of descent of real estate then in force in the State of

Rhode Island, if I had at that time died intestate, seized and possessed of said share or shares.

Twenty-ninth. I specially authorize and empower my Executor, whether acting as such or as Trustee, to sell and convey at public or private sale any of my property, real or personal (except my Homestead Estate and my Farm in said Town of Bristol) and to improve any of the property held by it as Trustee, with power in its discretion from time to time to alter and vary investments whether existing at my decease or made afterward, with power also to continue so long as it may deem best, any part of said trust premises in the state, form or investment in which the same may be at the time of my decease, with power to collect and receive the income arising from said premises and to pay all expenses attending the care and management of said trust premises including a reasonable compensation for its services. And I declare that all reinvestments shall be held upon the same trusts and be subject to the same powers as near as may be as the original investments comprising said trust estate.

Except as hereinbefore restricted, I authorize and empower my Trustee to exercise discretionary powers of sale, lease, partition and exchange over the real and personal estate or any part thereof, at the time of my decease or from time to time thereafter, composing or belonging to said trust estate, and to make, execute and deliver any instruments necessary to convey or transfer the legal title thereto. I declare that purchasers and other persons, who shall pay any trust moneys to my Trustee or to my Executor, shall be exempt from all responsibility in respect to the application of the same, and from the necessity of inquiring into the regularity, validity or propriety of any sale purporting to be made under the trusts or powers herein set forth.

I declare that the expression "My Trustee" used by me in this Will shall be construed as referring to and comprising the Trustee or Trustees for the time being under this Will, original or substituted.

It is my desire and I hereby request that wherever practicable the said Industrial Trust Company shall be appointed Guardian of the Estates of such of the beneficiaries named in this Will as shall be minors at the time the gifts to such beneficiaries shall take effect.

I desire specially to impress upon my children and other relatives remembered under this my Will that they shall not speculate in any manner with the funds given them hereunder. Speculation, besides unfitting one for regular occupations, does not pay and is almost certain to end in disaster. Money well invested with an average yield of say 5% will accumulate fast enough and the possessor of solid, unencumbered securities, who neither speculates nor borrows money, feels strong and independent and is in far better condition to cope with the trials of life which come to all.

*Edwards & Angell, Ronald B. Smith, Edward F. Hindle, John H. Blish,* for plaintiff.

Attorneys for certain defendants:

*Winograd, Winograd & Marcus, Max Winograd, Allan M. Shine;*

*Francis J. Maguire;*

*Ferdinand A. Bruno;*

*Quinn & Quinn, Thomas H. Quinn, Bernard V. Buonanno, Jr.;*

*Higgins & Slattery, Eugene V. Higgins;*

*Jordan, Hanson & Curran, William A. Curran* of counsel;

*Moakler, Sherlock & Geremia, John W. Moakler;*

*H. L. Weller, S. Everett Wilkins of counsel;*

*Coffey, Ward, McGovern and Novogroski, Matthew E. Ward, Dominic F. Cresto;*

*Forsythe, McGovern, Pearson & Nash, Carl S. Forsythe, Kenneth Pearson* of counsel;

696

*Moore, Virgadamo, Boyle & Lynch, Francis J. Boyle;*
*Bruce G. Sundlun;*
*Amram, Hahn & Sundlun, Walsh and Levine*
*W. Barton Leach* of counsel;
*Robert L. Levine* of counsel;
*George Schwolsky* of counsel;
*Jack C. Sando* of counsel, for defendants.